MAXWELL, J„ for the Court:
¶ 1. Wyman and Gloria Bradley’s claims against Kelley Brothers Contractors, Inc., Gregory Revette, and Clyde Revette for civil conspiracy, unjust enrichment, and intentional misrepresentation involve allegations of self-dealing over a county-approved, but federally reimbursed, hurricane-debris removal and disposal contract between Wayne County and Kelley Brothers. While differing somewhat, all three claims are based on allegations that Wayne County Supervisor Clyde Revette schemed with his son-in-law Jerry Kelley’s company, Kelley Brothers, and his son, Gregory, to profit from the county debris-removal contract by not paying the Brad-leys for providing a dumpsite.
¶ 2. The circuit court relied on language from a specific provision in the contract between Wayne County and Kelley Brothers to find the Bradleys’ claims of unjust enrichment and civil conspiracy against Kelley Brothers and Gregory failed as a matter of law. But the record contains another version of the debris removal and disposal contract — the version Clyde produced during discovery and represented to be the governing contract between Wayne County and Kelley Brothers. And quite interestingly, this second version, while identical in all other respects, differs materially in the specific provision on which the circuit court relied in granting summary judgment. Because the conflicting contracts throw a material fact issue into dispute — which entity (the county or Kelley Brothers) was actually responsible for negotiating with the Bradleys to dump debris on their property — we must reverse the grant of summary judgment to Kelley Brothers and Gregory.
¶ 3. We also find Clyde was not entitled to a judgment as a matter of law. Relying on Clyde’s status as a member of the Wayne County Board of Supervisors (the Board), the circuit court applied the Mississippi Tort Claims Act (MTCA) and its requirement of pre-suit notice to the Brad-leys’ claims of civil conspiracy and intentional misrepresentation against Clyde. But the Bradleys’ claims are based on alleged actions outside of the scope of Clyde’s employment with Wayne County, making the MTCA inapplicable. Since the Bradleys were not required to provide pre-suit notice, we also reverse the grant of summary judgment to Clyde. We remand this case to the circuit court.
Background

A. Contract to Remove and Dispose of Debris

¶ 4. After devastating the Mississippi Gulf Coast in late August 2005, Hurricane Katrina moved inland, leaving the roads in Wayne County clogged with storm debris. On September 12, 2005, the Board approved a contract to pay Kelley Brothers $18 per cubic yard to remove and dispose of the debris.
¶ 5. Clyde, who served as a member of the Board, joined in the unanimous vote to approve the county’s debris removal and disposal contract with Kelley Brothers. And Clyde’s son-in-law, Jerry, signed the contract in his capacity as president of Kelley Brothers. According to the parties, this contract was funded and overseen by the Federal Emergency Management Agency (FEMA).
¶ 6. Under section 2.1 of the contract recorded in the county’s minute books, Kelley Brothers was to “provide for debris removal and disposal of all eligible debris” from the county’s right-of-ways. And Kelley Brothers was also required to provide the dumpsites. Section 2.2 specified that “[t]he debris [was to] be taken to contractor provided dumpsites.” (Emphasis added). The first and last pages of *334 the recorded contract are attached to this opinion as “Appendix A.”
¶7. The same day the Board approved the Kelley Brothers contract, Clyde approached Wyman about the county possibly dumping debris on the Bradleys’ property. In the past, the Bradleys had permitted Wayne County to dump various other debris in their low-lying land, in an effort to eventually convert their wetlands into developable property. So it was not unusual when Wyman’s local supervisor asked him if the county could also dump Katrina debris on their property.
¶ 8. But on this occasion, Wyman allegedly asked Clyde if he and Gloria would be compensated, since he had recently heard that FEMA money might be available for the hurricane-debris disposal. And Clyde purportedly told him that, though the county was receiving FEMA money to remove debris from the roads, it was not receiving federal funding to dispose of the debris — so there was no money available for providing a dumpsite. However, Clyde did tell Wyman the county could come back and fill the debris with dirt, raising the elevation of his property. Clyde also alluded to possible money down the road for providing the dumpsite, but made no mention of the county’s contract with his son-in-law’s company, Kelley Brothers. According to Wyman, because Clyde told him the county was not receiving FEMA aid to dispose of the debris, nor paying anyone to dump it, he allowed the Katrina debris to be dumped on his property free of charge, save elevating the low-lying areas.
¶ 9. The Bradleys claim that over the next year, Kelley Brothers and its subcontractor, Gregory, dumped more than 800,-000 cubic yards of debris on their property, receiving $18 per cubic yard. And at some point, Kelley Brothers and Gregory paid Clyde $3 per cubic yard to haul and dispose of debris and $54,000 for allowing Gregory to borrow his truck. When finished, Kelley Brothers filled in dirt to the admitted betterment of the Bradleys’ property, but the Bradleys received no other compensation for providing a dump-site.

B. The Bradleys’Lawsuit

¶ 10. When the Bradleys discovered that their county supervisor, Clyde, and his relatives had profited from dumping debris on their property, they filed a Freedom of Information Act (FOIA) request to obtain a copy of the Wayne County / Kelley Brothers contract. But what they received in response was not the contract recorded in county’s minute book. Instead, they were given a version of the contract identical to the recorded contract, with one lone exception — section 2.2 differed.
¶ 11. Section 2.2 of the recorded contract required that “[t]he debris [was to] be taken to contractor provided dump-sites.” But section 2.2 of the version disclosed by the county in response to the Bradleys’ FOIA request stated that “[t]he debris shall be taken to an approved dumpsite indicated on the attached maps. All necessary permits shall be obtained by the County.” [1] The first and last pages of the unrecorded contract are attached to this opinion as “Appendix B.”
¶ 12. On September 11, 2008, the Brad-leys sued Kelley Brothers, Gregory, and Clyde in the Wayne County Circuit Court. They alleged Clyde falsely and fraudulently represented there was no FEMA money to pay to dispose of the debris, when in fact the county had used FEMA money to pay Kelley Brothers to dump debris on the *335 Bradleys’ property. The Bradleys further alleged Kelley Brothers and its subcontractor, Gregory, were unjustly enriched by dumping hundreds of thousands of cubic yards of debris on the their land free of charge.
¶ IB. The Bradleys’ final claim is based on Mississippi’s constitutional and statutory prohibitions against public officers, such as members of a county board of supervisors, like Clyde, being interested in a contract authorized by the political board on which he or she serves.[2] Specifically, the Bradleys alleged Clyde, his son Gregory, and his son-in-law Jerry’s company conspired to “cheat” the Bradleys out of compensation for providing a dumpsite, which permitted Kelley Brothers and Gregory to make more money under the contract and Clyde to illegally profit from the county contract through performing work as a subcontractor and “leasing” his truck to his son for $54,000.
¶ 14. The Bradleys sought $1.6 million in actual damages — or $2 per cubic yard of debris dumped on their property — plus $4.8 million in punitive damages. They attached to their complaint the unrecorded contract the county provided in response to their FOIA request. See Appendix B.

C. Summary Judgment

¶ 15. In July 2010, Clyde filed a motion for summary judgment. He argued that, because he was a county employee at the time he approached Wyman about the dumpsite, the MTCA applied — in particular the pre-suit notice requirement of Mississippi Code Annotated section 11-46-11(1) (Rev.2012). Because no pre-suit notice was given, Clyde insisted he was entitled to dismissal as a matter of law.
¶ 16. In January 2011, Clyde responded to the Bradleys’ discovery requests. In his response to their request for production of documents, he produced the recorded contract, which he represented was the “Wayne County / FEMA contract with Kelley Brothers Contractors, Inc.,” as well as the “minutes of the Wayne County Board meeting approving acceptance of [the] contract.”
¶ 17. In February 2011, while Clyde’s motion was still pending, Kelley Brothers and Gregory also filed a motion for summary judgment. But they relied on section *336 2.2 of the unrecorded contract attached to the complaint, claiming the contract gave them no choice where to haul the debris. Citing this lack of choice, Kelley Brothers and Gregory maintained they were contractually bound to dump the debris in a county-approved dumpsite, which happened to be the Bradleys’ property. They argued that, because they never promised to pay the Bradleys anything, they could not have been unjustly enriched. They also argued the Bradleys’ conspiracy claim lacked proof of an agreement to accomplish an unlawful purpose or a lawful purpose unlawfully.
¶ 18. The Bradleys responded to Kelley Brothers and Gregory’s motion, arguing there were disputed issues of material fact. In their response, the Bradleys specified they were relying on Clyde’s discovery responses to their request for production of documents. They simultaneously filed these responses with their reply, making the recorded contract part of the record.
¶ 19. On May 4, 2011, the circuit court entered orders on both motions for summary judgment. In one, the court relied exclusively on section 2.2 of the unrecorded contract to grant summary judgment in Kelley Brothers and Gregory’s favor, citing a lack of evidence of unjust enrichment and civil conspiracy. In the other, the circuit court granted summary judgment in Clyde’s favor based on the Bradleys’ failure to file pre-suit notice under the MTCA.
¶ 20. The Bradleys timely appealed.[3]
Discussion
¶ 21. Appellate courts review grants of summary judgment de novo, employing the same standard as the trial court. Titan Indem. Co. v. Estes, 825 So.2d 651, 654 (¶ 11) (Miss.2002). We look at “all eviden-tiary matters” in the record to see if there is any genuine issue of material fact and if the movant is entitled to a judgment as a matter of law. Id.; see also Aikens v. Whites, 8 So.3d 139, 140 (¶ 9) (Miss.2008); M.R.C.P. 56(c). In conducting this review, we give the nonmoving party — in this case the Bradleys — the benefit of any doubt about whether a fact issue exists. Simmons v. Thompson Mach. of Miss., Inc., 631 So.2d 798, 802 (Miss.1994) (citing Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983)).
I. Genuine Issue of Material Fact
¶ 22. Looking at all record evidence before us, we find that, based on the recorded contract, Kelley Brothers and Gregory failed to meet their burden to show there is no genuine issue of material fact. See Roebuck v. McDade, 760 So.2d 12, 14 (¶ 9) (Miss.Ct.App.1999) (citations omitted) (holding that the moving party has “[tjhe burden of showing no genuine issue of material fact exists”).

A. Genuine Issue

¶ 23. We find the discrepancy between section 2.2 of the recorded contract and section 2.2 of the unrecorded contract creates a factual dispute. The particular dispute raised by the contradictory but like-numbered contractual provisions is whether Kelley Brothers was the entity actually responsible for securing the Brad-leys’ property as a dumpsite and negotiating compensation or if Kelley Brothers indeed had “no choice” and was merely *337 dumping debris where it was told by the county.
¶ 24. As to the effect of the different contracts, Kelley Brothers and Gregory first argue the unrecorded contract controls because it was the contract Kelley Brothers signed and operated under. While this indeed may be so, we note that the recorded version of the contract also contains the purported signature of Kelley Brother’s president, Jerry, though it appears to be photocopied. And the contract upon which Kelley Brothers relies was apparently not the version attached to the Board’s minutes, bearing the page-number stamp, indicating it was recorded in the minute book. See Mound Bayou Sch. Dist. v. Cleveland, Sch. Dist., 817 So.2d 578, 582 (¶ 12) (Miss.2002) (citing Nichols v. Patterson, 678 So.2d 673, 676 (Miss.1996)) (holding “public bodies may not be bound by contracts without evidence of the contract terms in the minutes”). Still, though our curiosity is piqued by the questions surrounding the two contracts, we are not the fact-finder. And the task before us is not to decide which contract was the “real contract” since summary-judgment motions “may not be used to determine or decide issues of fact.” Am. Legion Ladnier Post No. 42 v. City of Ocean Springs, 562 So.2d 103, 106 (Miss.1990) (citing Brown, 444 So.2d at 362). Rather, the purpose for these dispositive motions and the sole focus of our de novo review here is “to decide whether there are any material fact issues to be tried.” Id.; see also Smith v. Waggoners Trucking Corp., 69 So.3d 773, 777 (¶ 15) (Miss.Ct.App.2011) (“The purpose of summary judgment is to determine whether a triable issue exists,” not to resolve it.). While we cannot and do not resolve the issue over the discrepancies between the two contracts or sign off on the veracity of the Bradleys’ claims, we do find that the dispute over which version of the contract was the governing version is a triable issue.
¶ 25. Kelley Brothers and Gregory alternatively argue that the recorded contract is not within the scope of our de novo review. As they see it, because the circuit court relied on section 2.2 of the unrecorded contract, we too must limit our review to the unrecorded contract. In support they rely on Mitchell v. Nelson, 830 So.2d 635, 640 (¶ 14) (Miss.2002), which involved the different procedural mechanism of a motion for reconsideration under Mississippi Rule of Civil Procedure 60(b). Mitchell, 830 So.2d at 638 (¶ 6). In Mitchell, it was only after summary judgment was granted that the plaintiffs sought to introduce through a Rule 60(b) motion an affidavit they claimed created a genuine issue of material fact. Mitchell, 830 So.2d at 640 (¶ 14). On appeal, the supreme court rejected their argument that the later-filed affidavit made summary judgment improper, noting that appellate courts “should only review orders granting summary judgment by examining the evidence before the trial court and not consider new evidence.” Id. But here, unlike Mitchell, we are not confronted with new evidence introduced through a post-judgment motion. Clyde had already produced the recorded contract during discovery as well as the Board’s minutes “approving the acceptance of [the] contract.” And the recorded contract was made part of the trial record before the circuit court ruled — when the Bradleys responded to Kelley Brothers and Gregory’s motion for summary judgment by citing their reliance on Clyde’s discovery responses and by filing those responses, which included the recorded contract, with the court.
¶ 26. Further, the fact the Bradleys attached the unrecorded contract to their complaint does not limit our consideration of the recorded contract. Rule 56 directs *338 us to consider not only the pleading but also evidence produced in discovery. M.R.C.P. 56(c). And our supreme court instructs that we look to “all evidentiary matters in the record” when reviewing grants or denials of summary judgment. Harrison v. Chandler-Sampson Ins., Inc., 891 So.2d 224, 228 (¶ 11) (Miss.2005). Understandably, the Bradleys attached the unrecorded contract to their complaint because it was the version Wayne County’s attorney gave them. Though reasonable explanations perhaps exist, it is unclear at present why Wayne County did not respond to the Bradleys’ FOIA request by providing a copy of the contract recorded in its minute book. But what is clear is that the recorded contract is part of the record and, thus, must be considered in our de novo review.

B. Material Fact

¶27. To survive summary judgment, it is not enough that disputed facts exist — such facts must also be material. Citifinancial Retail Servs. v. Hooks, 922 So.2d 775, 779 (¶ 18) (Miss.2006). A “material fact” is “one that matters in an outcome determinative sense[.]” Id. (quoting Simmons, 631 So.2d at 801). Here, the outcome of Kelley Brothers and Gregory’s motion for summary judgment — that the Bradleys’ claims of unjust enrichment and civil conspiracy failed — was determined based on the language of section 2.2 of the unrecorded contract. So a dispute over what section 2.2 actually provided is material to both of these claims.

1. Unjust Enrichment

¶ 28. “Unjust enrichment” is a “modern designation for the doctrine of ‘quasi-contracts.’ ” Magnolia Fed. Sav. & Loan Ass’n v. Randal Craft Realty Co., 342 So.2d 1308, 1311 (Miss.1977). “[T]he basis for an action for ‘unjust enrichment’ lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his.” Id. This restitution-based remedy “applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received.” Willis v. Rehab Solutions, PLLC, 82 So.3d 583, 588 (¶ 14) (Miss.2012).
¶ 29. Though we do not know which version of the contract controlled, we do know that section 2.2 of the recorded version required that “[t]he debris shall be taken to contractor provided dump-sites.” Appendix A (emphasis added). As the first paragraph of the contract explains, the word “contractor” as it is used in the agreement refers to Kelley Brothers. So if Kelley Brothers, not Wayne County, was the party responsible for gaining permission to dump debris on the Bradleys’ property, and Kelley Brothers was indeed compensated millions of dollars for dumping hundreds of thousands of cubic yards of debris on the Bradley’s property, a jury could potentially find there was an implied promise to, in turn, compensate the Bradleys. And because Gregory, as a subcontractor, was also enriched under the debris-removal contract, there is at least a fact issue over whether it was unjust that a portion of his compensation did not go to the Bradleys.
¶ 30. We also note Wyman’s deposition testimony that, if the county was not paying anyone for a dumpsite, the Bradleys agreed not to be compensated beyond improving the elevation of their property. But if there was FEMA money for a dumpsite, the Bradleys understood they would receive a portion of it. Viewing all of this evidence in the light most favorable to the Bradleys — including the recorded *339 contract and the alleged intentional misrepresentation by Clyde—-we find fact issues exist precluding summary judgment on the Bradleys’ unjust enrichment claim.

2. Conspiracy

¶ 81. The circuit court also dismissed the conspiracy claim, relying heavily on the unrecorded contract. “A conspiracy is an agreement between two or more persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.” Braddock Law Firm, PLLC v. Becnel, 949 So.2d 38, 44 (¶ 20) (Miss.Ct.App.2006) (citing Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So.2d 777, 786 (¶ 37) (Miss.2004)). “Where damages arise as a result, there may be a right of recovery for civil conspiracy.” Id.
¶ 32. To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons,[4] (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result. Gallagher Bassett Servs., 887 So.2d at 786 (¶ 37); Taylor v. S. Farm Bureau Cas. Co., 954 So.2d 1045, 1050 (¶ 14) (Miss.Ct.App.2007); see also 16 Am.Jur.2d Conspiracy § 51 (2009). These elements are quite similar to those required of a criminal conspiracy, with the distinguishing factor being that an “agreement is the essence of a criminal conspiracy,” while “damages are the essence of a civil conspiracy.” 15A C.J.S. Conspiracy § 7 (2012).
¶ 33. Still, an agreement between the parties must be established. But it need not extend to all details of the scheme and may be express, implied, or based on evidence of a course of conduct. 16 Am.Jur.2d Conspiracy § 51. For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement. Id. And even if there is a clear agreement on the front end, “[a] conspiracy standing alone, without the commission of acts causing damage is not actionable.” 15A C.J.S. Conspiracy § 7.
¶ 34. Here, the Bradleys allege that Clyde, Gregory, and Kelley Brothers devised a plan for Clyde to illegally profit from a county contract authorized by the political body on which Clyde served and for Kelley Brothers and Gregory to profit additionally from the contract by not having to pay to secure a dumpsite to dispose of the debris. As part of the alleged conspiracy, Gregory would pass on some of the resulting increased profits to Clyde by hiring him as a subcontractor and leasing Clyde’s truck to haul debris, even though Mississippi law prohibited Clyde from profiting under the contract.
¶ 35. In furtherance of the conspiracy, Clyde purportedly approached Wyman to secure a dumpsite by intentionally misrepresenting to Wyman that he was acting on the county’s behalf and that compensation was not available for debris disposal, when Clyde was instead acting in his own individual interest and that of Kelley Brothers and Gregory, to enable each to additionally profit under the contract by not having to pay the Bradleys to use their property as a dumpsite. The Bradleys allege that through these acts they suffered damages—specifically, not being compensated for use of their land.
*340 ¶ 36. The circuit court acknowledged potentially unlawful actions — noting that Clyde admitted he profited under the contract with Kelley Brothers, a contract approved by the political body on which he served. But the court found the Bradleys could not show any implicit agreement between Kelley Brothers, Gregory, and Clyde that proximately caused the Brad-leys damages.
¶ 37. According to the circuit court, because section 2.2 of the contract required the county to provide the dumpsite, Kelley Brothers and Gregory had no choice but to dump the debris where Wayne County directed. But again, we point out that the conflicting recorded version of section 2.2 required Kelley Brothers, not the county, to provide the dumpsite. Viewing this evidence in the light most favorable to the Bradleys, the recorded version of the contract, at a minimum, clashes with the circuit court’s conclusion that Kelley Brothers and Gregory “had no choice where to dump the debris.” The recorded contract also, when viewed in the Bradleys’ favor, contradicts the circuit court’s finding that “any money paid to the debris site chosen by Wayne County would have no bearing on” Kelley Brothers and Gregory.
¶ 38. With that said, we note that our review is hindered somewhat because neither party requested the April 18, 2011 summary-judgment hearing be transcribed.[5] So we are left without any record of whether the discrepancy between section 2.2 of the recorded and unrecorded contracts was addressed by the circuit judge or even brought to his attention at the hearing. Without a transcript, we simply do not know.
¶39. However, this court is instructed to view motions for summary judgment “with a skeptical eye” and in close cases to “err on the side of denying the motion.” Slade v. New Horizon Ministries, Inc., 785 So.2d 1077, 1079 (¶7) (Miss.Ct.App.2001) (citing Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss.1986)). Because of the uncertainties surrounding the controlling contract, we must adhere to these notions and find a material fact issue was decided by the court when it found that Kelley Brothers and Gregory had “no choice” in the matter and no financial interest in Clyde’s negotiation with Wyman over a dumpsite, when arguably they did under the recorded contract. Considering the conflicting contracts, Wyman’s testimony about Clyde’s misrepresentations that led to the Bradleys’ providing a free dump-site, and the fact that Kelley Brothers and Gregory passed some of their profits to Clyde on a contract he voted to approve— profits the Bradleys allege should have instead gone to them — we find fact issues exist on the conspiracy claim. Therefore, we reverse the summary judgment that was granted in Kelley Brothers and Gregory’s favor.
II. Notice Under the MTCA
¶ 40. We also reverse summary judgment granted in Clyde’s favor, which was solely based on the Bradleys’ noncompliance with the MTCA’s pre-suit notice provision. The circuit court found it could not “distinguish Clyde’s actions [toward Wy-man] as individual actions, but rather must view his actions as those which flow from his role as a Supervisor of Wayne County.” Because “at the time Clyde ... approached the [Bradleys] about dumping on their land, he was a member of the [B]oard *341 of [Supervisors of Wayne County,” the circuit court found pre-suit notice was required.
¶ 41. But the Mississippi Supreme Court has held a government employee’s actions are distinguishable as individual actions when they are outside the scope of his employment. McGehee v. DePoyster, 708 So.2d 77, 80 (¶ 10) (Miss.1998). In McGehee, the supreme court made clear the fact a defendant was a government employee at the time he committed the alleged tortious acts does not in itself mandate notice. “[G]overnmental employment, standing alone, does not trigger the notice provision of the [MTCA].” Id. (quoting Bienz v. Bloom, 674 N.E.2d 998, 1004 (Ind.Ct.App.1996)). If “a government employee [is] sued in his individual capacity for actions not within his scope of employment,” then section 11-46-1 l(l)’s notice provision does not apply. McGehee, 708 So.2d at 78 (¶ 1). But see Holmes v. Defer, 722 So.2d 624, 625 (¶ 9) (Miss.1998) (overruled on other grounds) (holding a suit against a sheriff in his individual capacity was subject to section 11^46-ll(l)’s notice requirements because the sheriff “was acting in his official capacity”).
¶ 42. Mississippi Code Annotated section 11-46-5(2) (Rev.2012) expressly provides that a government “employee shall not be considered as acting within the course and scope of his employment ... if the employee’s conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.” Similarly, Mississippi Code Annotated section 11-46-7(2) (Rev.2012) excludes fraudulent, malicious, defamatory, and (non-traffic) criminal conduct from the scope of employment.
¶ 43. We find the circuit court erred when it found all of Clyde’s actions that “flowed from” his role as county supervisor fall under the MTCA. Instead, the court should have looked to section 11-46-5(2) to determine if the Bradleys’ allegations were based on conduct within Clyde’s scope of employment with the county. See McGehee, 708 So.2d at 81 (¶ 11) (holding that because the plaintiff alleged defamation, an act excluded from sections 11-46-5(2) and 11-46-7(2), the plaintiff did not have to provide the public employee pre-suit notice).
¶ 44. The Bradleys alleged Clyde was acting on behalf of Kelley Brothers, not Wayne County, when he approached Wy-man. And they alleged Clyde’s actions constituted fraud — both individually and in concert with Gregory and Kelley Brothers — and malice. And a government employee shall not be considered as acting within the scope and course of his employment for conduct amounting to fraud and malice. See Miss.Code Ann. § 11-46-5(2); cf. Roderick v. City of Gulfport, Miss., 144 F.Supp.2d 622, 638 (S.D.Miss.2000) (finding plaintiffs allegations against public employee included malice, which fell outside the public employee’s scope of employment under section 11-46-7(2)).
¶ 45. Because the Bradleys’ claims of intentional misrepresentation and civil conspiracy are based on alleged conduct outside the scope of Clyde’s employment with the county, the MTCA’s notice requirement does not apply. Thus, the Bradleys’ “failure” to provide pre-suit notice under the MTCA could not form a basis to grant Clyde summary judgment.
¶ 46. THE JUDGMENT OF THE WAYNE COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPEL-LEES.
*342 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

Appendix A

STATE i_, MISSISSIPPI

°S83

COUNTY OF WAYNE
CONTRACT FOR DEBRIS REMOVAL RELATED TO HURRICANE KATRINA IN WAYNE COUNTY, MISSISSIPPI
THIS AGREEMENT made September 12, 2005 between the Board of Supervisors of Wayne County, Mississippi acting for and on behalf of Wayne County, Mississippi, Wayne County Courthouse, Waynesboro, Mississippi 39367, retened to as the 'County* and Kelley Brothers Contractors, Inc., P. 0. Drawer 1079, Waynesboro. Mississippi 39367, referred to as the •Contractor’.
1.0 GENERAL
The purpose of this contract Is It* remove and dispose or ail eligible debris from Wayne County, Mississippi Rlghts-of-Way (ROW) and applicant owned property within Wayne County, Mississippi. The aroa to be Included as part of this contract Is located within the Wayne County, Mississippi. Including the City of Woynesboro, Mississippi.
2.0 SERVICES.
2.1 The Contractor shall provide tor debris removal and disposal of a8 eligible debris from Wayne County, Mississippi’s ROW and applicant owned property.
2.2 The debris shall be taken to contractor provided dumpsites.
2.3 The estimated amount of debris to be removed under this contract Is not guaranteed. The unit price of $16.00 per cubic yard will be used lor payment.
2.4 The Contractor shall document the current conditions of all roadways, sidewalks and all structures to remain In the debris removal area, tn addition, all roadways along the haul routes shall be documented. A representative of Ihe County shall be present during this Inspection.
2.5 Haul and Dispose. The work shall consist of clearing, separating, and removing Bnyand all eligible debris (see definitions of eligible debris) from public property only, Including ROW of strocta and roads. Work shall Include: 1) examining and sorting debris to determine whether or not debris is eligible end to doterminc whether eligible debris is burnable or non-bumable (or other categories specific lo the project site); 2) loading and sorting the debris; 3} hauling the eligible debris Id an approved dumpsites; 4) provide adequate equipment at the approved dumpslte to prevent tho debris from piling up and obstructing the unloading; 5) provide final reduction of debris acceptable and approved by Mississippi Departmenl of Environmental Quality (DEQ), to Include burning, chipping, burying or left in place, whichever may be approved by DEQ. Ineligible debris shall not be loaded, hauled, or dumped under this contract. The Contractor Is liable tor all ineligible debris handled during the life of this contracl. The County's representative shall be immediately notified of any Ineligible debris placed at the right of way for collection.
Clyde Revello 10

*343
V&3

19.0 ACCEPTANCE OF CONTRACT
The Codirector shaft provide all the documentation required es per SECTION INSURANCE of this contract within the specified tíme llmll, and providing a list of all Subcontracts and Proof of Insurance of aft Sub-Contractors being used under this contract.
The Contractor shall provide Wayne County, Mississippi Board of Supervisors the required insurance certificate^) with a clause that shows Indemnity and Hold Harmless tram injuries, damages, or tosses caused by the negligent actions of the Contractor or Its Employees to Wayne County, Mississippi Board of Supervisors.
The Contractor shall provide proof of Workman's Compensation as required by the Stale ot Mississippi.
As agreed upon by the Wayne County, Mississippi Board of Supervisors end Kelley Brothers Contractors, Inc., local sub-conUactors and individuals will be used, to the extent •possible, during Ihls debris removal project.
The Contractor agrees to complete ihe work in a professional, workmanlike manner and within the scope of work guidelines sel forth above based on Ihe unit pricing submitted by Ihe contractor.
IN WITNESS WHEREOF, the parlies have agreed to the above requirements and have entered into the above contract this day of Seplember, 20G5.
WAYNE COUNTY BOARD OF SUPERVISORS KELLEY BROTHERS, INC.
[[Image here]]
9
Clyde Revetfe 27

*344
Appendix B

STATE OP MISSISSIPPI
COUNTY OF WAYNE
CONTRACT FOR DgiRIS REMOVAL RELATED TO HURRICANE KATRINA IN WAYNE COUNTY, MISSISSIPPI
¡THIS AGREEMENT made September; 12,2Q05 between the'Board of Supervisors of Wayne Couhty, Mississippi acting for and ón behalf of Wayna County, Mississippi, Wayne County Courthouse, Waynesboro, Mississippi 33367. referred to as the "County" and Kelley Brothers Contractors, Ins., P. Q. Drawer 1079, Wáynetboro Mississippi 39367, referred to as the-"Contractor"-,
1.0 GENERAL.
The purpose of title contract Is to remove and dispose of ell eligible debrid from Wayne County, Mississippi Rlghls-ot-Way (ROW) and applicant owned property within Wayne County, Mississippi. The area to be included as part of this contract is lopaled within the Wayne County, Mississippi, Including the City bf Wavnesbord, MIssIssIpdi.
2.0 SERVICES,
2.1 ¡The Contractor- shall provide for debris removal and-rfltoosal-of all eliataid /Wayne County, Mississippi's ROW áhB applioint owned property.
2.2 The debris shall be taken to an approysd dumpstta indicated-on the attached maps. All necessary permitís shall be obtained By (he County,
2.3 The estimated amount of debflsto 6e removed under this contract is not guaranteed. Che unit price of $18.00per cubic yard will be used for payment.
2.4 The Contractor shall' document the current bondltlone ot alt roadways, sidewalks and all structures (ó remain.In (ha debris removajairea. In addijlon, ill roadways;alang theftaul routes'shall be documented. A representativa of the Cdunty shall be present during this inspection.
2.5Haul add Dispose. Tha work phall cortsial of clearing, separating, and removing any and all eligible dr.bris.(see definitions bf eliglble'debrts) frompubllc property only. Including ROW bf streets and'roads. Work shaft include: 1} examining and soriing'rdebris to determine whether ór nol debits Is eligible and to determine whether eligible debris is burnable ar nan-burnable (brother Categories specific to the project sile);'2) loading end sorting tha debris; 3) hauling ihe eligible debris to an approved dumpsiiejpf) provide adequate equipment at the approved dump'slte lb prevent the debris from piling up and obstructing the uploading; 5) provide final reduction ot debris acceptable end approved by Mississippi Department or Environmental Quality (DEQJ, to include burning, chipping, burying bf toft in place, whichever may be approved by DEQ.'.Ineligible debris shall not be loaded.-hauled, or dumped under this contract. .The Contractor is liable for all Ineljpihle . debrismandled durino4ha.lif»o(Jhl<kriontraól. TheCoiintyto representative shall be' Immediately notified of any ineligible debris placed at the light of way to^oilection^^^ r~sr
*345 *8.0 ACSEPTAWee OF CONTRACT
Tim Contractor shall provids all ths documeniaiton required as per SECTION INSURANCE of this contract within the specified ttms limit, and providing 0 list of all Subcontracts and Proof of Insurance of all Subcontractors balng uead under this contract.
The Contractor shall provide Wayne County, Mississippi Board of Supervisors the required Insurance cerífica te(s) with a clausa (hat shows Indemnity end Hold Harmless from Injurias, damages, or losses caused by the negligent actions of the Contractor or Its Employees to Wayne County, Mississippi Board of Supervisare.
The Contractor shall provide proof of Workman's Compensation as required by the State
As agreed upon by the Wayne County, Mississippi Board of Supervisors and Kelley Brothers Contractors, Inc., local subcontractors and individuals will be used, to tha extant ■psalble, during this debris removal pronta. ¡
The Contractor agrees to complete the work In a professional, workmanlike manner and within thB 'scope of work guidelines set forth above based on the unit pricing submitted by the contractor.
IN WITNESS WHEREOF, tha partiere have agreed to the above requirements end heve entered into the shove contract this _1£®. day of September, 2006.
WAYNE COUNTY BOARD OF SUPERVISORS KELLEY BROTHERS, INC.
[[Image here]]

. No maps are attached to the unrecorded contract that is part of the record.

. Under Article IV, Section 109 of the Mississippi Constitution:
No public officer or member of the legislature shall be interested, directly or indirectly, in any contract with the state, or any district, county, city, or town thereof, authorized by any law passed or order made by any board of which he may be or may have been a member, during the term for which he shall have been chosen, or within one year after the expiration of such term.
The Mississippi Legislature has more specifically prohibited a public servant's financial interest in public business. Under Mississippi Code Annotated section 25 — 4—105(1)—(3)(a) (Rev.2010):
(1)No public servant shall use his official position to obtain, or attempt to obtain, pecuniary benefit for himself other than that compensation provided for by law, or to obtain, or attempt to obtain, pecuniary benefit for any relative or any business with which he is associated.
(2) No public servant shall be interested, directly or indirectly, during the term for which he shall have been chosen, or within one (1) year after the expiration of such term, in any contract with the state, or any district, county, city or town thereof, authorized by any law passed or order made by any board of which he may be or may have been a member.
(3) No public servant shall: ... Be a contractor, subcontractor or vendor with the governmental entity of which he is a member, officer, employee or agent, other than in his contract of employment, or have a material financial interest in any business which is a contractor, subcontractor or vendor with the governmental entity of which he is a member, officer, employee or agent.

. Because the two simultaneous orders disposed of all the Bradleys' claims against all three defendants, each order became a final, appealable judgment. But see M.R.C.P. 54(b) (providing that an order that "adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties" is not a final order unless the trial court expressly determines it is final).

. A person can conspire with a corporate entity. And "[w]here an officer, agent or employee of a corporation maliciously or wrongfully, but in the course of employment, enters into a conspiracy to defraud or commit other wrongs against another for the benefit of the corporation, the corporation will be liable[J” 10 Fletcher Cyc. Coip. § 4884 (Rev.2010).

. This court ordered the circuit court to provide a transcript, if one existed, of the April 18, 2011 summary-judgment hearing and was informed by the Wayne County Circuit Clerk’s office that no transcript exists.