# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00970-COA

**NINA BRELAND**                                                        **APPELLANT**

**v.**

**TRUSTMARK CORPORATION D/B/A**                      **APPELLEES**
**TRUSTMARK NATIONAL BANK, PROCTOR**
**FINANCIAL INC. A/K/A PROCTOR FINANCIAL**
**INSURANCE COMPANY, AND CERTAIN**
**UNDERWRITERS AT LLOYD'S OF LONDON,**
**INCLUDING IRONSHORE EUROPE LIMITED**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/2019 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER JACKSON WELDY |
| ATTORNEYS FOR APPELLEES: | WILLIAM 'TREY' JONES III JACOB ARTHUR BRADLEY JAMES LAWRENCE WILSON IV |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 01/04/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.

## McCARTY, J., FOR THE COURT:

¶1.     A homeowner sued the bank that held her mortgage and the bank's insurance company.  The bank had force-placed insurance on her property because she let her prior insurance lapse.  She claimed the insurance company refused to pay for damage after a storm.

¶2.     The trial court granted summary judgment, finding the bank and insurance company were not liable because she did not have a contractual relationship with the insurer.  Finding

there was no genuine issue of material fact, we affirm.

## FACTS

### A. Ms. Breland purchases a house.

¶3. In 2004, Trustmark National Bank loaned Nina Breland $78,500 to allow her to buy a house in Gulfport. The house was financed by a Fannie Mae[1] mortgage through Trustmark. As a result, Trustmark used a series of guidelines propagated by Fannie Mae.

¶4. The Deed of Trust on the home required Ms. Breland to insure it. In pertinent part, the Deed of Trust stated:

> If Borrower fails to maintain any of the coverages described above, Lender **may** obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase **any particular type or amount of coverage**. Therefore, **such coverage shall cover Lender, but might or might not protect Borrower**, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and **might provide greater or lesser coverage than was previously in effect**. Borrower acknowledges that the **cost of the insurance coverage** so obtained **might significantly exceed the cost of insurance that Borrower could have obtained**.

(Emphasis added). She initially obtained a homeowner's hazard insurance policy and wind policy for the home. Ms. Breland maintained this private insurance from March 2004 to March 2015.

### B. The private insurance coverage lapses.

¶5. In 2015, Ms. Breland's insurance carrier notified her that it was discontinuing her insurance coverage for wind damage. Ms. Breland failed to obtain a new wind policy.

---

[1] The Federal National Mortgage Association, known as Fannie Mae, is a Great Depression era enterprise created by Congress to "promote access to mortgage credit throughout the Nation . . . ." *See* 12 U.S.C. § 1716(4); 12 C.F.R. § 1253.2.

¶6.     Trustmark sent letters to Ms. Breland on several occasions informing her that the hazard and windstorm coverage had lapsed.  By these notices, the bank informed her that under the Deed of Trust it intended to force-place insurance if she did not secure her own private insurance.  The letters Trustmark sent to Ms. Breland regarding the force-placed insurance informed her that the insurance might be more expensive than private insurance she could purchase herself and that the force-placed insurance might not provide as much coverage as private insurance.

**C.     The windstorm insurance policy is issued to Ms. Breland.**

¶7.     After Ms. Breland failed to obtain adequate insurance coverage, Trustmark secured force-placed insurance coverage on her house through a third-party insurance servicing company known as Proctor Financial Inc.  The force-placed policy was issued by Ironshore Europe Limited.  According to the Deed of Trust, Ms. Breland was obligated to pay the policy premiums despite her interests being unprotected by the insurance.  Notably, Trustmark—not Ms. Breland—was the named insured under the policy.  Ms. Breland was not a party to the policy and was not an additional insured on the policy.

¶8.     The policy issued windstorm coverage which ran from 2015 through 2016.  The policy charged a higher premium than Ms. Breland had paid for her private insurance.  The policy also had a $5,000 deductible, which Ms. Breland's private insurance did not have.  Ms. Breland never obtained windstorm coverage during the 2015 through 2016 period.

¶9.     As a result, the force-placed windstorm coverage was reinstated from 2016 to 2017 in the amount of $100,000.

**D.      Ms. Breland's home is damaged in a windstorm.**

¶10.    In March 2016, Ms. Breland's home was damaged in a windstorm. She initially claimed a loss of $2,244. She filed a windstorm claim with Ironshore. The insurer denied the claim on the basis that its investigation revealed that the cost to repair the home did not exceed the $5,000 deductible. In August 2017, Ms. Breland commissioned a second inspection of her home. This second inspection quoted Ms. Breland an estimate of $14,550 to replace her roof and decking as well as correct termite damage. Ms. Breland later obtained private insurance coverage, and Trustmark subsequently canceled the force-placed coverage.

**PROCEDURAL HISTORY**

¶11.    Ms. Breland had filed a complaint for damages in the Harrison County Circuit Court in May 2017. After obtaining the second inspection, Ms. Breland filed an amended complaint in January 2019, alleging causes of action against Trustmark for breach of duty of good faith and faith dealing, negligence and/or negligence per se, conspiracy, and punitive damages. In regard to Ironshore and Proctor, Ms. Breland asserted the same claims as well as breach of contract. Ms. Breland asserted all three companies violated both Mississippi law and Fannie Mae's Servicing Guidelines. Trustmark and Ironshore both filed motions for summary judgment.

¶12.    In granting summary judgment, the trial court found that Ms. Breland was not a third-party beneficiary to the force-placed insurance contract, Trustmark did not breach its contract with Ms. Breland, and she had no private right of action to enforce federal Fannie Mae regulations that governed her mortgage. The trial court further held that Trustmark and the

4

insurance companies did not act wrongfully and dismissed Ms. Breland's claims of civil conspiracy and punitive damages.

¶13.   Ms. Breland appealed.

## STANDARD OF REVIEW

¶14.   "A trial court's grant of summary judgment is reviewed de novo." *Phillips v. Delta Reg'l Med. Ctr.*, 290 So. 3d 386, 390 (¶14) (Miss. Ct. App. 2020). "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Lefler v. Wasson*, 295 So. 3d 1007, 1009 (¶7) (Miss. Ct. App. 2020). "Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment is proper where 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Bissette v. Univ. of Miss. Med. Ctr.*, 282 So. 3d 507, 513 (¶10) (Miss. Ct. App. 2019).

¶15.   However, "summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Lefler*, 295 So. 3d at 1009 (¶7) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 89 (¶11) (Miss. 2013)). Questions concerning the construction and interpretation of contracts are questions of law, which we review de novo. *Bissette*, 282 So. 3d at 513 (¶10).

## DISCUSSION

## I.    Ms. Breland is not a third-party beneficiary to the contract.

¶16.    Ms. Breland sued Ironshore and Proctor for breach of contract, and the trial court dismissed her cause of action on the grounds that neither company was a party to any contract with her.  On appeal, the homeowner argues that she is a third-party beneficiary to the force-placed insurance contract.[2]

¶17.    Our Supreme Court has explained what a party must show to establish it is a third-party beneficiary.  *Adams v. Greenpoint Credit LLC*, 943 So. 2d 703, 709-10 (¶15) (Miss. 2006).  "In order for the third person beneficiary to have a cause of action *the contracts between the original parties must have been entered for his benefit*, or at least *such benefit must be the direct result of the performance within the contemplation of the parties as shown*

---

[2] In this appeal, it is clear Ms. Breland claims third-party-beneficiary status with Ironshore, the insurance company that contracted with Trustmark for windstorm coverage, and Proctor, the wholesale broker for the insurer.  However, in the trial court, Ms. Breland sued "Certain Underwriters at Lloyd's of London, including Ironshore Europe Limited." Ironshore responded to the complaint and summons issued to that named entity.  A motion to dismiss was filed in the trial court claiming there was no precise entity as "Certain Underwriters at Lloyd's of London, including Ironshore Europe Limited," but only the defendant Ironshore.  However, that motion was never ruled upon.

An appeal is only final when it "adjudicates the merits of the controversy and settles all issues *between all parties*."  *LaFontaine v. Holliday*, 110 So. 3d 785, 787 (¶8) (Miss. 2013) (emphasis added).  Although no party has raised the issue of whether all parties are present for purposes of a final judgment pursuant to MRCP 54(b), "an appellate court must address issues of jurisdiction on its own motion."  *Hamilton v. Southwire Co.*, 191 So. 3d 1275, 1279 (¶15) (Miss. Ct. App. 2016).

After a review of the record, we are satisfied that the grant of summary judgment in this case resolved all of the claims and liabilities of all parties to this case.  MRCP 54(b).  However, we caution the parties to an appeal to ensure that the claims and defenses of *all* parties have been adjudicated and the judgment is final.  Otherwise, the appeal will be dismissed—headed to what one commentator calls "the graveyard of appeals."  Hon. Larry Primeaux, *MRCP 54(b): Graveyard of Appeals* (June 11, 2012), https://betterchancery.com/2012/06/11/mrcp-54b-graveyard-of-appeals/ (last visited January 4, 2022).

*by its terms*." *Id*. (emphasis in original). Next, "[t]here must have been a legal obligation or duty on the part of the promisee to such third person beneficiary." *Id*. at 710 (¶15). Last, "the obligation must have been a legal duty which connects the beneficiary with the contract." *Id*. In other words, "the *right of the third party beneficiary* to maintain an action on the contract *must spring from the terms of the contract itself*." *Id*. (emphasis in original).

¶18.    Neither this Court nor the Mississippi Supreme Court has tackled the precise question of whether a homeowner is a third-party beneficiary to force-placed insurance. However, several federal district courts have concluded they are not. In one decision, a federal district court in Mississippi ruled "that any benefit to the [homeowners] under this contract would be merely incidental, which is insufficient under Mississippi law to confer third-party beneficiary status." *Paulk v. Balboa Ins. Co.*, No.1:04CV97, 2006 WL 1994864, at *3 (S.D. Miss. July 14, 2006). In that case, a business in Bay St. Louis allowed its insurance to lapse. *Id*. at *1. When the insurance company learned of the lapse in insurance, it purchased insurance for its own benefit. *Id*. The Paulks sustained damage to their business as a result of a tropical storm. *Id*. The Paulks claimed they were third-party beneficiaries to the flood-insurance policy purchased by the insurance company and, as a result, were entitled to payment for damage to their business. *Id*.

¶19.    The district court held that the property was insured by the insurance company for its personal benefit and found that the insurance policy provided no direct benefit to the property owners. *Id*. at *3. The district court concluded the Paulks were merely incidental beneficiaries of the insurance policy, not third-party beneficiaries, and "that any benefit to

the Paulks under the contract would be merely incidental, which is insufficient under Mississippi law to confer third-party beneficiary status." *Id*. As a result, the Paulks failed to show that there was "a genuine issue of material fact for the jury regarding their status as third-party beneficiaries." *Id*.; *see also Simpson v. Balboa Ins. Co.*, No. 2:08CV281KS-MTP, 2009 WL 1291275, at *5 (S.D. Miss. May 7, 2009) (finding homeowner was not a third-party beneficiary to force-placed insurance, as "any benefit to the plaintiff . . . would be merely incidental"); *Bacallao v. Balboa Ins. Co.*, No. 1:08CV1438 LG-RHW, 2009 WL 10675164, at *2 (S.D. Miss. Oct. 29, 2009) (same).

¶20. The approach taken by the federal courts in *Paulk*, *Simpson*, and *Bacallao* is the general approach taken by courts who have examined this issue. *See In re Barbel*, 191 F. App'x 101, 104-05 (3d Cir. 2006) (When "the contract at issue was between [the bank] and the insurance providers, with [the property owner] as an additional insured," the property owner's "claims necessarily fail as a matter of law."). In a well-reasoned decision, the trial court relied upon *Paulk*, *Bacallao*, and several other federal district court cases to conclude that Ms. Breland was not a third-party beneficiary.

¶21. On appeal, Ms. Breland urges we instead adopt the approach taken by a single Texas Court of Appeals case which grappled with "whether a homeowner-borrower qualifies as a third-party beneficiary under a force-placed insurance policy entered into between the insurance company and the mortgage company." *Alvarado v. Lexington Ins. Co.*, 389 S.W.3d 544, 553 (Tex. App. 2012). The Texas court first noted the general rule in that State that there was a "presumption against finding third-party beneficiaries to contracts," so "courts

8

will generally deny third-party-beneficiary claims" except in certain circumstances. *Id*. at 552.

¶22.   Nonetheless, after a lengthy analysis that turned on the specific language of the policy between the insurance company and the mortgage company and a review of the approach of other courts, the *Alvarado* Court concluded that the plaintiff had third-party-beneficiary status. *Id*. at 559.  The Texas court viewed the policy in that case as "manifest[ing] a clear intent to directly benefit both" the mortgage company as well as 'any mortgagor claiming coverage or monetary benefit' for damage to property[.]"[3]  *Id*.

¶23.   Ultimately, we find the reasoning of the federal district courts of Mississippi more persuasive than *Alvarado*.  The Mississippi Supreme Court has held that to receive third-party-beneficiary status, the contract "must have been entered *for his benefit*."  *Adams*, 943 So. 2d at 708 (¶15) (emphasis added).  Here, the contract for insurance between Trustmark and Ironshore was not for the benefit of Ms. Breland, but rather for the benefit of the bank. Additionally, it is clear under the Deed of Trust and on the plain face of the insurance contract that Ironshore's insurance was intended to protect the interests of Trustmark.  The whole purpose of the Deed of Trust's clause securing force-placed insurance was to safeguard the interests of the mortgage holder.  Here, the mortgage holder is Trustmark.

¶24.   The Deed of Trust provided that Trustmark could obtain insurance to protect the

---

[3] A subsequent case at the Texas Court of Appeals has distinguished *Alvarado*. *In re Am. Nat'l Prop. & Cas. Co.*, No. 01-19-00727-CV, 2020 WL 573250, at *5 (Tex. App. Feb. 6, 2020) (noting the broad language of the policy in *Alvarado* and concluding that the plaintiff "did not establish that he had a right to enforce the policy as a third-party beneficiary," so the plaintiff did not have standing).

bank's interest in the property in the event that Ms. Breland failed to obtain the required insurance she was required to have on the house. According to the Deed of Trust, Ms. Breland agreed that Trustmark was not obligated to purchase insurance, any insurance Trustmark purchased would insure *Trustmark's* interest only and not Ms. Breland's interests, the coverage may be greater or lesser than Ms. Breland's previous coverage, and the cost of the insurance coverage "might significantly exceed the cost of insurance that Borrower could have obtained."

¶25.    Additionally, the Deed of Trust makes clear that "**such coverage shall cover Lender**, but might or might not protect Borrower . . . ." (Emphasis added). In other words, the force-placed insurance was not for her benefit. In addition, the letters sent to her indicated that insurance was being force-placed to protect the bank's interests, and these notices were sent to her on more than one occasion. Furthermore, Ms. Breland is not a named insured or categorically described insured on the contract.

¶26.    As stated above, our Supreme Court has explicitly made clear that third-party-beneficiary status "*must spring from the terms of the contract itself*"—i.e., it must be "*shown by* [*the contract's*] *terms*." *Id*. at 709 (¶15). The contract for insurance between Trustmark and Ironshore does not mention Ms. Breland and was not for her benefit, but for the benefit of her mortgage holder.

¶27.    As a result, the trial court properly granted the motions for summary judgment on this point.

   **II.     The bank and insurance companies did not breach the implied duty
            of good faith and fair dealing.**

10

¶28.    Ms. Breland alleges that the bank and insurance companies breached the implied duty of good faith and fair dealing.

¶29.    The Supreme Court has held that "[a]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 744 (¶81) (Miss. 2019). "The duty of good faith and fair dealing arises from the existence of a contract between parties[.]" *Id*. "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *Id*. at (¶82). Bad faith "requires a showing of more than bad judgment or negligence; rather, [it] implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *Id*. In other words, "[t]he covenant holds that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Jones v. Miss. Institutions of Higher Learning*, 264 So. 3d 9, 19 (¶27) (Miss. Ct. App. 2018). As stated above, this covenant is implied in "[a]ll contracts." *Gulf Coast Hospice LLC*, 273 So. 3d at 744 (¶81).

### A.    Neither Ironshore nor Proctor has a contractual relationship with Ms. Breland.

¶30.    Here, Ms. Breland contends that the contracts at issue are the Deed of Trust between herself and Trustmark and the force-placed insurance policies covering her home. However, it is axiomatic that the duty of good faith arises only when there is a contractual relationship between parties. *See Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1207 (¶35) (Miss. 2001) ("The duty of good faith and fair dealing arises from the existence of a *contract* between parties."); *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992) ("Good faith is the

11

faithfulness of an agreed purpose between two parties . . . .").  As established above, neither Ironshore nor Proctor were parties to any contract with Ms. Breland.  Therefore, her claim against the bank and insurance companies fails as a matter of law.  We affirm the grant of summary judgment on this claim.

### B. Trustmark's contract with Ms. Breland expressly allowed force-placed insurance.

¶31.    Ms. Breland argues that Trustmark breached its duty of good faith under the Deed of Trust by (1) force-placing insurance coverage that was unnecessarily high; (2) undervaluing the cost to repair her home and misrepresenting the deductible; (3) denying her claim even though Trustmark knew the estimate was insufficient to repair the property after she received a second opinion that stated otherwise; and (4) canceling the force-placed insurance policy after she submitted her claim for wind damage.

¶32.    "[I]n performing a contract, the parties are not prevented from 'protecting their respective economic interests or from asserting their rights in the event of a default.'" *Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 269 (¶28) (Miss. 1999).

¶33.    With respect to the above allegations, the record does not reflect that Trustmark violated any of its duties of good faith and fair dealing toward Ms. Breland.  Instead, Trustmark invoked its rights as explicitly allowed by the Deed of Trust.  When Ms. Breland failed to procure home insurance, Trustmark took "actions which were duly authorized by the contract." *Id.*  Notably, in Ms. Breland's brief, she admits that Trustmark was authorized to force-place insurance on her home per the terms of the Deed of Trust.  Indeed, Trustmark's actions were expressly allowed under the terms of the Deed of Trust:  as it

stated, "[B]orrower acknowledges that the cost of the insurance coverage . . . **might significantly exceed the cost of insurance that Borrower could have obtained**." (Emphasis added).

¶34. Trustmark's actions were expressly allowed pursuant to the Deed of Trust, and no evidence exists to suggest that Trustmark breached its implied duty of good faith. As such, Trustmark did not breach its implied duty of good faith and fair dealing under the contract.

### III. Violations of the Fannie Mae loan-servicing guidelines do not constitute negligence or negligence per se.

¶35. Ms. Breland argues that Trustmark, Ironshore, and Proctor were required to act within the Fannie Mae guidelines but failed to do so with regard to her mortgage. She specifically asserts negligence per se based on "the defendant's disregard of the duties set out in the guidelines." She also argues that by denying her claim, their disregard caused her house to remain unrepaired, which "violated the expectations set by the guidelines." She claims this "conflicted with the purpose and intent of the guidelines and constituted negligence and negligence per se."

¶36. To recover for negligence, a plaintiff must prove each of the elements of a negligence claim: (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Banks v. Brinker Miss. Inc.*, 146 So. 3d 388, 391 (¶8) (Miss. Ct. App. 2014). The Supreme Court has also delineated that "negligence is the result of the failure to perform a duty; therefore, actionable negligence cannot exist in the absence of a legal duty to an injured plaintiff." *Foster ex rel. Foster v. Bass*, 575 So. 2d 967, 972 (Miss. 1990). "The existence vel non of a duty of care is a question of law to be decided by the Court." *Id*.

¶37. Additionally, "Mississippi recognizes the doctrine of negligence per se, which essentially provides that breach of a statute or ordinance may render the offender liable in tort without proof of lack of due care." *Benson v. Rather*, 211 So. 3d 748, 756 (¶29) (Miss. Ct. App. 2016). "To prevail in an action for negligence per se, a party must prove that he was a member of the class sought to be protected under the statute, that his injuries were of a type sought to be avoided, and that violation of the statute proximately caused his injuries." *Id*.

¶38. Crucially, in a claim of negligence, a plaintiff must establish a duty owed to it by a defendant. *Demoney v. Gateway Rescue Mission*, 304 So. 3d 652, 657 (¶16) (Miss. Ct. App. 2020). So in order for Ms. Breland to survive summary judgment and claim negligence, she will have to first prove that the defendants owed her a duty set by the Fannie Mae loan guidelines.

¶39. However, "[f]ederal courts have uniformly held that borrowers are not third-party beneficiaries of mortgage servicing guidelines." *Pennell v. Wells Fargo Bank N.A.*, No. 1:10-CV-00582-HSO, 2012 WL 2873882, at *8 (S.D. Miss. July 12, 2012), *aff'd*, 507 Fed. App'x 335 (5th Cir. 2013). This is because "Fannie Mae's servicing guide is a set of instructions from a lender-principal to a servicer-agent; it is not a contract between borrower and lender." *Id*. (citations omitted); *accord Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 357 (5th Cir. 1977) (finding no enforceable duty under HUD disclosures).

¶40. As one federal court has concluded, Fannie Mae's servicing guide simply "is not law." *Hinton v. Fed. Nat'l Mortg. Ass'n*, 945 F. Supp. 1052, 1056 (S.D. Tex. 1996), *aff'd*, 137 F.3d 1350 (5th Cir. 1998). Accordingly, we find that the Fannie Mae guidelines do not create an

14

enforceable duty of care to Ms. Breland.

¶41. Even if we interpret the guidelines as a contract, since "Mississippi law requires that the right of a third party to maintain an action as a third-party beneficiary must 'spring from the contract terms[,]'" Ms. Breland cannot offer "competent summary judgment evidence to support the conclusion that [she was an] intended third-party beneficiar[y] of Fannie Mae's servicing guidelines." *Pennell*, 2012 WL 2873882, at *8. As such, we reach the same conclusion as the federal court in *Pennell*. Just as in that case, where the district court ruled that "[t]here can be no real dispute that Plaintiffs are not third-party beneficiaries of the guidelines and lack standing to enforce them," Ms. Breland likewise is not a third-party beneficiary of the guidelines, and therefore lacks standing to enforce them. *Id.* As a result, her negligence claim fails.

¶42. With respect to her negligence per se claim, in her reply brief Ms. Breland urges this Court to consider as a matter of first impression to allow a jury to determine whether the Fannie Mae guidelines were violated. To support her argument, she cites a Mississippi Supreme Court case that suggests a statutory or regulatory violation can show negligence per se. *See Ala. Great S. R.R. Co. v. Lee*, 826 So. 2d 1232, 1236-37 (¶¶15-17) (Miss. 2002).

¶43. While it is true that a statutory or regulatory violation can show negligence per se, the guidelines are not law, and the guidelines were not issued to a member of a class meant to be protected—they were issued to protect Fannie Mae's interests by enumerating how loan servicers were intended to manage loans as assured by Fannie Mae. In other words, Ms. Breland was not within the realm of protection set forth by the loan servicing guidelines. As

15

a result, her negligence and negligence per se claims fail to surpass summary judgment.

### IV. A civil conspiracy did not exist between the bank and the insurance companies.

¶44. Ms. Breland alleges that Trustmark, Ironshore, and Proctor "acted in concert" to apply a higher deductible in order to deny her claim. Specifically, she contends that proof of this conspiracy exists because Proctor told her that her electronic file showed a $1,000 deductible rather than the $5,000 deductible that was stated in the contract.

¶45. "A conspiracy is an agreement between two or more persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (¶31) (Miss. Ct. App. 2013). "Where damages arise as a result, there may be a right of recovery for civil conspiracy." *Id*. To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result. *Id*. at (¶32). "A civil conspiracy requires a meeting of the minds on the object or course of action." *S. Health Corp. of Houston v. Crausby*, 174 So. 3d 916, 920 (¶15) (Miss. Ct. App. 2015) (internal quotation mark omitted).

¶46. In order for Trustmark to have committed civil conspiracy, Ms. Breland would have to first prove the first element of civil conspiracy—that there was an agreement among Trustmark, Proctor, and Ironshore. As shown above, no unlawful acts have been committed, let alone any rising to the level of civil conspiracy. Although Ms. Breland's brief is ripe with assertions that Trustmark and the insurance companies "acted in concert," she offers no

evidence or reference to competent summary judgment evidence to support these assertions. Ms. Breland merely asserts that Trustmark, Ironshore, and Proctor "acted in concert" to apply a higher deductible as a way to deny her claim.

¶47.   In any case, the higher-deductible contention that Ms. Breland makes is incorrect because the deductible is outlined in the plain language of the policy.  As such, the failure to submit evidence of the meeting of the minds between the insurance companies negates Ms. Breland's allegations, because it does not meet the first element of civil conspiracy. Accordingly, Ms. Breland's civil conspiracy claim against Trustmark fails.

¶48.   As was the case for Trustmark, there is also no evidence in the record to substantiate Ms. Breland's allegations of civil conspiracy in regard to Ironshore and Proctor.  As stated above, there was no agreement among the three companies to commit an unlawful act, and as a result, her civil conspiracy claim once again fails as a matter of law.

¶49.   Ms. Breland has failed to put forth sufficient evidence to support a conspiracy claim against the bank and the insurance companies.  Ms. Breland has not demonstrated the existence of a genuine dispute as to any material fact with respect to her conspiracy claims. As a result, we affirm.

### V.     Ms. Breland's claims against the bank and insurance companies for punitive damages fail as a matter of law.

¶50.   Under Mississippi law, punitive damages may be considered "[i]f, but only if, an award of compensatory damages has been made against a party . . . ."  *See* Miss. Code Ann. § 11-1-65(c) (Rev. 2019).  As all the defendants correctly point out, Ms. Breland's claim for punitive damages fails at the outset because there was no award for compensatory damages.

17

"[W]ithout actual damages, punitive damages are not recoverable." *Boatright v. A & H Techs. Inc.*, 296 So. 3d 687, 701 (¶63) (Miss. 2020).

¶51.    Regardless, under Mississippi law, to obtain punitive damages, Ms. Breland must prove that Trustmark, Ironshore, and Proctor "acted with actual malice [or] gross negligence which evidences a willful, wanton or reckless disregard for the safety of others . . . ." *See* Miss. Code Ann. §11-1-65.  And as the trial court correctly pointed out in its Order, punitive damages require proof by clear and convincing evidence, and no evidence exists in the record to meet this burden of proof.  *Id*.  Therefore, we affirm.

## CONCLUSION

¶52.    Because there is no genuine issue of material fact in this case that would preclude summary judgment, we affirm the trial court's ruling.

¶53.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**