631 So.2d 798 (1994)
Marvin SIMMONS
v.
THOMPSON MACHINERY OF MISSISSIPPI, INC.
No. 91-CA-0251.
Supreme Court of Mississippi.
February 3, 1994.
*799 A.E. (Gene) Harlow, Sr., Harlow & Harlow, Grenada, for appellant.
William R. Sanders, Jr., Charleston, for appellee.
Before PRATHER, P.J., and BANKS and McRAE, JJ.
McRAE, Justice, for the Court:
This appeal arises from a summary judgment dismissal of a cross-complaint filed in a cause originally begun as an action in replevin instituted by Thompson Machinery of Mississippi [hereinafter "Thompson"] against Marvin Simmons [hereinafter "Simmons"] in the Circuit Court of the First Judicial District of Tallahatchie County. Simmons raises three issues on appeal. He claims the trial judge erred in: (1) denying his motion for leave to file an amended response and counterclaim; (2) ruling that his cross-complaint filed in the wake of a replevin action filed by Thompson failed to state a cause of action; and (3) awarding summary judgment to Thompson after finding there existed no genuine issue of material fact to be tried.
As this case is before us within the context of Rule 56(c) of the Mississippi Rules of Civil Procedure, the pleadings are reduced to great importance. Accordingly, we restrict ourselves to the allegations of the cross-complaint, amended counterclaim, affidavits and depositions of the parties. Giving Simmons, as we must, the benefit of any doubt, we reverse and remand for a hearing on the merits of Simmons' amended counterclaim.

STATEMENT OF FACTS
Marvin Simmons is a man with a second grade education who can read a little, write a little and sign his own name. Simmons, however, has worked for others in the timber business for many years and has a great deal of experience and expertise in the timber business. In 1985 Simmons started his own logging operations after being approached and encouraged by a salesman for Taylor Machinery, a predecessor of Thompson. Simmons and Thompson subsequently entered into four lease/rental/purchase agreements for heavy logging equipment. According to Simmons' affidavit, he, however, did not fully understand the nature and terms of the contracts into which he entered.
Thompson's affidavit reflects that payments made pursuant to each of the above agreements were current as of August 31, 1989. Simmons' payments on all four pieces of machinery for the months of September, October, and November 1989, however, were past due. On June 16, 1989, Simmons signed some "papers" which he claims Thompson told him were necessary to reduce his monthly payments. The papers were, in fact, "upon demand" promissory notes totaling $108,247.31. Simmons argues that until he signed the "upon demand" promissory notes he could have surrendered each piece of equipment at the end of the rental agreements. Thompson claims it had Simmons execute the promissory notes in order to have some security in case Simmons did not want to purchase the equipment at the end of the lease period.
Simmons testified at his deposition that he continued to operate all four pieces of equipment until Thompson seized the first two pieces. Thompson Machinery, seeking possession of the other two pieces of heavy equipment in the hands of Simmons, filed its complaint in replevin on February 13, 1990. An "Agreed Order" entered March 21, 1990, required that the two pieces of machinery which were the subject of the replevin action be placed at a neutral site and further ordered the parties to file any additional claims or counterclaims prior to any further hearing.
On May 10, 1990, Simmons filed an original cross-complaint alleging, inter alia, that he was forced to take bankruptcy because of Thompson's claim that Simmons was behind on his payments and Thompson's threats to repossess the equipment. Simmons further claimed he had been harassed for payments which Thompson wrongfully alleged were *800 overdue. Simmons also alleged that Thompson failed to give him the "buy out" value of the property at the time the "buy out" was requested. Simmons stated generally that numerous other activities on the part of Thompson damaged Simmons personally and in his business.
On September 26, 1990, Thompson filed a motion for summary judgment, together with supporting affidavits and a host of business documents. On October 17, 1990, Thompson's motion for summary judgment was noticed for hearing on November 2, 1990. On November 2, 1990, Simmons filed, along with his response to the summary judgment motion, a motion to amend his previous responses and counterclaim. On November 2, 1990, the trial judge limited argument to the issue of summary judgment and declined to consider Simmons' motion for leave to amend etc. until after the court had ruled on Thompson's motion for summary judgment.
On January 30, 1991, the trial judge granted Thompson summary judgment on the replevin issue. This portion of the lower court's ruling has not been assailed by Simmons on appeal. The judge held the original cross-complaint failed to state a cause of action upon which relief could be granted. On February 26, 1991, the lower court, upon the record alone, entered an order denying Simmons' motion for leave to file an amended response and counterclaim, thus this appeal.

1. Denial of Simmons' Motion For Leave to File Amended Response and Counterclaim

On March 21, 1990, by their "Agreed Order", the parties were directed to file any additional claims or counterclaims "prior to any further hearing on this matter by the court"; otherwise, such claims would be considered barred. On September 26, 1990, Thompson filed its motion for summary judgment and a hearing was set for November 2, 1990. On November 2, 1990, Simmons filed a motion to amend his response and counterclaim. Copies of the amended pleadings were delivered to Thompson's attorney on the evening of November 1, 1990. The motion for leave to amend was subsequently denied by the lower court as untimely. Simmons argues that his request for leave to amend should have been granted since justice so required and there had been no suggestion of undue prejudice toward Thompson. Thompson, on the other hand, claims that the motion to amend came much too late.
Motions for leave to amend are left to the trial judge's sound discretion. McDonald v. Holmes, 595 So.2d 434, 436 (Miss. 1992); Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss. 1984). Proposed amendments have been liberally permitted throughout Mississippi legal history and are encouraged under Miss.R.Civ.P. Rule 15; however, "[u]nless we are convinced that the trial judge abused his [judicial] discretion, we are without authority to reverse." Parker v. Mississippi Game and Fish Commission, 555 So.2d 725, 730 (Miss. 1989).
Miss.R.Civ.P. 15(a) provides, inter alia, that "leave [to amend] shall be freely given when justice so requires." Simmons points to the Comment to Rule 15 which states, in its pertinent parts, that "[i]n practice, an amendment should be denied only if the amendment would cause actual prejudice to the opposite party." (Emphasis added). No prejudice has been demonstrated, or even alleged, in the case at bar.
In Red Enterprises, Inc. v. Peashooter, Inc., 455 So.2d 793, 795 (Miss. 1984), quoting from Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962), this Court defined the contours of Rule 15(a) as follows:
Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded ... [I]f the underlying facts or circumstances relied upon by the plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason  such as... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.  the leave should, as the rules require, be "freely given." [emphasis added].
"[S]ince attorneys sometimes fail to write perfect pleadings, it is necessary that courts *801 permit liberal amendments of the pleadings in order to reach the actual merits of a controversy." William Iselin and Company, Inc. v. Delta Auction and Real Estate Company, 433 So.2d 911, 913 (Miss. 1983).
The trial judge abused his judicial discretion in the case sub judice by not granting Simmons' motion to amend and refine his pleadings. Notwithstanding the lateness of the hour, the motion for leave to amend was filed within the time frame permitted by the "Agreed Order" entered by the court on March 21, 1990, which stated in plain and ordinary English "[t]hat the parties are hereby Ordered to file any additional claims or counter-claims concerning said equipment, prior to any further hearing on this matter by the Court."
Moreover, the motion to amend did not alter the gist of Simmons' allegations which involved fraud and misrepresentation; rather, it merely set forth the cause of action with more specificity in order to clarify the issues. Finally, neither Thompson nor the trial court identified any undue prejudice toward Thompson in the event the motion to amend was granted. In the final analysis, we hold that under the facts of this case, Simmons should have been granted leave to file his proposed amended response and counterclaim.

2. The Standard for Summary Judgment
Mississippi's summary judgment rule provides, inter alia, that summary judgment shall be entered by a trial judge "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss.R.Civ.P. 56(c). The burden of showing that no triable genuine issue of material fact exists is on the moving party (Thompson), and the non-movant (Simmons) is given the benefit of doubt. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss. 1990). "All that is required of a non-movant to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule." Lyle v. Mladinich, 584 So.2d 397, 398 (Miss. 1991). Furthermore, it is standard practice that "(a)ll motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side denying the motion." Claiborne County Board of Education v. Martin, 500 So.2d 981, 981 (Miss. 1986).
The focal point of our standard for summary judgment is on material facts. In Shaw v. Burchfield, 481 So.2d 247 (Miss. 1985), we said:
The summary judgment movant has a burden of persuasion; a burden to establish that there is no genuine issue of material fact to be tried. Pearl River County Board v. South East Collection, 459 So.2d 783, 785 (Miss. 1984); Brown v. Credit Center, Inc. 444 So.2d 358, 362 (Miss. 1983). The party opposing the motion must rebut, if he is to avoid entry of an adverse judgment, by bringing forth probative evidence legally sufficient to make apparent the existence of triable fact issues. Smith v. First Federal Savings and Loan Association of Grenada, 460 So.2d 786, 792 (Miss. 1984).
Of importance here is the language of the rule authorizing summary judgment "where there is no genuine issue of material fact." The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense. As the extensive record in this case has been considered, as well as the persuasive and articulate briefs of counsel, we have kept ever before us that basic tenet of Rule 56 theology that the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact. [emphasis added]
Id. at 252.
This Court employs de novo review of a trial court's award of summary judgment. McMichael v. Nu-Way Steel and Supply, Inc., 563 So.2d 1371, 1374 (Miss. 1990); Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61 (Miss. 1988). All *802 evidentiary matters are examined in the light most favorable to the party against whom the summary judgment motion has been made. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983). When there is doubt whether a fact issue exists, the non-moving party is the beneficiary of that doubt. Brown, 444 So.2d at 362. Finally, a trial court's grant of summary judgment is not a proxy for a full-fledged trial of disputed fact issues. "Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." Id.

3. Is this a Proper Case For Summary Disposition?
Our conclusion regarding the amended counterclaim, as opposed to the original cross-complaint, dictates the result of the summary judgment issue. Simmons' affidavit, deposition, and documents in evidence demonstrate, within the context of Simmons' amended pleadings, genuine issues of material fact. When viewed in the light most favorable to Simmons, his evidence states a cause of action for fraud, and/or misrepresentation, and/or overreaching. Given our disposition on the amended cross-complaint, it is unnecessary to decide whether the original cross-complaint failed to state a cause of action.
"[T]he clear and convincing standard required of the evidence to sustain a claim of fraud is certainly met in a summary judgment posture when one witness specifically claims a representation was in fact made." McMullan v. Geosouthern Energy Corporation, 556 So.2d 1033, 1037 (Miss. 1990). Finally, in a motion for summary judgment, a genuine issue of material fact is obviously present where one party testifies to one account of the matter in interest and the other party swears otherwise. Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990).
As the facts reveal, clearly there exist disputed material facts. "Motions for summary judgment may not be used to determine or decide issues of fact, only to decide whether there are any material fact issues to be tried." American Legion Ladnier Post Number 42 v. City of Ocean Springs, 562 So.2d 103, 106 (Miss. 1990). This opinion should not be construed as resolving the issues of fraud and misrepresentation in favor of Simmons; rather, we are simply saying that, on the basis of the evidence in the record, Simmons is entitled to an opportunity to prove the merits of his case at a trial by jury. As the benefit of the Fdoubt should go to the party opposing the granting of summary judgment, this case is reversed and remanded for trial on the amended counterclaim.
Based on the facts and posture of this case, the trial court erred in not allowing Simmons' amendments to his pleadings and in granting summary judgment as there were material facts in conflict. For the foregoing reasons, we reverse and remand this case.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.