# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00603-COA

C.D. PULLIAM                                                          APPELLANT

v.

ALFA INSURANCE COMPANY AND ANGELA                                    APPELLEES
NANCE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2016 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERTA LYNN HAUGHTON |
| ATTORNEYS FOR APPELLEES: | RICHARD SHANE MCLAUGHLIN |
| | MICHAEL EARL PHILLIPS |
| | NICOLE H. MCLAUGHLIN |
| | JACOB O. MALATESTA |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 01/30/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., WILSON AND WESTBROOKS, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Annie Patterson was the owner and primary beneficiary of a $50,000 life insurance policy that insured the life of her nephew and ward, Christopher Nance. Annie designated Christopher's biological mother, Angela Nance, as the policy's contingent beneficiary. After Annie died, her father, C.D. Pulliam, attempted to make himself an owner and beneficiary of the policy. When Christopher died about a year later, a dispute arose as to whether C.D. or Angela was entitled to the proceeds of the policy.

¶2.     The insurer, Alfa Insurance Co., filed an interpleader complaint to resolve the dispute

and deposited the proceeds of the policy with the court. C.D. filed counterclaims against Alfa, alleging negligence and other tortious conduct in connection with his attempt to make changes to the policy. The chancery court eventually ruled that (1) Alfa was entitled to interplead all potential claimants under the policy and to be discharged from liability under the policy; (2) C.D.'s counterclaims should be "dismissed as moot"; and (3) Angela was entitled to the proceeds of the policy as its beneficiary. For the reasons that follow, we find no error and affirm as to the first and third issues, but we hold that C.D. permissibly filed counterclaims in this interpleader action and that those counterclaims should not have been "dismissed as moot." Accordingly, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶3. In September 2008, the Clay County Chancery Court appointed Annie Patterson general guardian of her nephew, Christopher Nance, who was then fourteen years old. Christopher's mother, Angela Nance, joined in Annie's petition for the guardianship. In November 2008, Alfa issued a $50,000 life insurance policy on the life of Christopher. Annie was the owner and primary beneficiary of the policy, and Angela was listed as the contingent beneficiary of the policy. Annie paid all premiums on the policy until her death on April 30, 2013. The policy provides that "upon the death of the owner, ownership and control of the policy . . . shall pass to the estate of the deceased owner."

¶4. Annie was survived by her father, C.D. Pulliam, and siblings, Otis Pulliam and Willie

2

Mae Townsend. No estate was ever opened for Annie. In October 2013, C.D. and Otis provided Alfa with an affidavit stating that they and Willie Mae were Annie's heirs. In addition, Otis completed an Alfa "Change of Ownership" form that purported to make Otis the owner of the policy, C.D. the contingent owner, Otis and C.D. the primary beneficiaries, and Willie Mae a contingent beneficiary. C.D. alleges that agents or employees of Alfa filled out the form and documentation and directed them to sign. C.D. also alleges that he paid all premiums on the policy after Annie's death.

¶5. Christopher died on November 16, 2014. The record contains a letter dated November 17, 2014, that is addressed to Annie and states as follows: "This is your notification that your recent policy change request has been closed as incomplete." The record is unclear as to what prompted this letter, which is dated only one day after Christopher's death but more than one year after Annie died and C.D. and Otis originally attempted to make changes to the policy. According to Alfa, the original attempted policy change was "closed as incomplete" because, in October 2013, Otis and C.D. had "incorrectly filled out a single owner form" rather than a form for multiple owners. As noted above, however, C.D. alleges that agents/employees of Alfa prepared the forms for him and Otis to sign.

¶6. On January 23, 2015, Alfa filed an interpleader complaint in the Clay County Chancery Court "to determine the proper beneficiary or beneficiaries of the . . . policy." Alfa named C.D., Otis, Willie Mae, and Angela as defendants. Alfa stated that C.D. and Otis claimed that they were entitled to the proceeds of the policy as the primary beneficiaries.

3

Alfa also stated that Angela had "not yet filed a claim" but might be entitled to the proceeds, "as she was named the contingent beneficiary by Annie . . . when the policy was purchased." Alfa stated that it had "not been able to determine which of [them was] legally entitled to the proceeds." Alfa also filed a motion, which the court granted, to deposit $50,578.46 with the court pursuant to Mississippi Rule of Civil Procedure 22.

¶7.    C.D. filed an answer and countercomplaint against Alfa. C.D. claimed that he was entitled to the proceeds of the policy, and he asserted counterclaims against Alfa for breach of contract, breach of the duty of good faith and fair dealing, negligence, gross negligence, bad faith failure to adjust and pay an insurance claim, tortious breach of contract, and punitive damages. C.D.'s countercomplaint generally alleged, among other things, that he had paid all premiums on the policy after Annie's death, that Alfa's agents or employees had filled out the change-of-ownership forms for him, and that any mistake in making the change of ownership and designation of new beneficiaries was the result of Alfa's tortious conduct. Angela sent a two-page pro se letter to the judge, which the clerk filed and docketed as her answer to Alfa's complaint. The docket reflects that Otis and Willie Mae were served, but neither answered the complaint or otherwise participated in the litigation.

¶8.    Alfa answered C.D.'s countercomplaint and then filed a motion for summary judgment. In its motion for summary judgment, Alfa argued that it was entitled to summary judgment on its interpleader complaint because it had deposited the proceeds of the policy with the court. However, Alfa did not directly address C.D.'s counterclaims. The court held

4

a hearing on the motion and granted Alfa's motion for summary judgment. The court's order stated that C.D.'s countercomplaint was "dismissed as moot." Angela appeared pro se at the summary judgment hearing, and the court advised her that she might want to hire an attorney to protect her interest in the litigation.

¶9. C.D. filed a notice of appeal from the court's order. However, Alfa filed a motion to dismiss the appeal. Alfa argued that the chancery court's order was not a final, appealable judgment because the chancellor did not finally adjudicate ownership of the interpled funds or certify the order as final pursuant to Mississippi Rule of Civil Procedure 54(b). A panel of the Supreme Court granted Alfa's motion and dismissed the appeal. *Pulliam v. Alfa Ins.*, No. 2015-TS-01147 (Dec. 17, 2015).

¶10. While the first appeal was pending, Angela retained counsel and filed a motion for summary judgment claiming ownership of the interpled funds as the rightful beneficiary of the policy. The chancery court subsequently granted Angela's motion for summary judgment and entered a final judgment finding that Angela was the beneficiary of the policy and that she was entitled to the proceeds because C.D. and Otis lacked authority to change the ownership and beneficiaries of the policy following Annie's death.

¶11. C.D. filed a timely notice of appeal from the final judgment. He identifies two issues on appeal: (1) whether the chancery court erred by "granting summary judgment to [Alfa] and dismissing [his] counterclaim" and (2) whether the chancery court erred in granting summary judgment and "awarding the interpled funds to Angela."

**ANALYSIS**

¶12. We review a chancery court's grant or denial of summary judgment de novo. *Miss. Dep't of Revenue v. Hotel & Rest. Supply*, 192 So. 3d 942, 945 (¶5) (Miss. 2016). A party is entitled to summary judgment if the record shows that there is no genuine issue of material fact and that the party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). We review the summary judgment record in the light most favorable to the nonmoving party. *Thomas v. Chevron U.S.A. Inc.*, 212 So. 3d 58, 60 (¶7) (Miss. 2017). However, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Mississippi Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim." *Morton v. City of Shelby*, 984 So. 2d 323, 330 (¶17) (Miss. Ct. App. 2007).

**I.      Interpleader and C.D.'s Counterclaims Against Alfa**

¶13. Mississippi Rule of Civil Procedure 22 permits a plaintiff to file a complaint for interpleader and join as defendants "[p]ersons having claims against the plaintiff . . . when their claims are such that the plaintiff is or may be exposed to double or multiple liability." M.R.C.P. 22(a). "Any party seeking interpleader . . . may deposit with the court the amount claimed, . . . and the court may thereupon order such party discharged from liability as to such claims and the action shall continue as between the claimants of such money . . . ."

M.R.C.P. 22(b). Interpleader protects a stakeholder subject to competing claims to identifiable funds "from being obligated to determine at his peril which claimant has the better claim." M.R.C.P. 22 cmt. "[A]nd, when the stakeholder himself has no interest in the fund, [interpleader] forces the claimants to contest what essentially is a controversy between them without embroiling the stakeholder in the litigation over the merits of the respective claims." *Id.* "The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder is whether the stakeholder legitimately fears multiple vexations directed against a single fund." *Id.*

¶14. "Ordinarily, interpleader is conducted in two 'stages.'" *Id.* In the first stage, the court determines "whether the plaintiff is entitled to interplead the defendants," and in the second stage, the court determines who is entitled to the interpled funds. *Id.* Alfa has admitted from the outset of this litigation that the beneficiary of the subject life insurance policy is entitled to its proceeds, which Alfa deposited with the chancery court. And Alfa's complaint only asked the chancery court to identify the proper beneficiary or beneficiaries under the policy. Therefore, Alfa emphasizes that its role should be limited to the "first stage" of the interpleader action.

¶15. We have no difficulty affirming the chancery court's determination that Alfa was entitled to interplead the defendants. Indeed, this case presents a common, well-recognized scenario in which interpleader is appropriate. *See, e.g.*, Jeffrey Jackson & Jason D. Childress, *Mississippi Insurance Law and Practice* § 19:12 (3d ed. 2017) ("A life insurer that

7

is uncertain regarding to whom policy proceeds should be paid may interplead the competing claimants and tender the policy proceeds to the court."); 7 Charles Alan Wright, Arthur R. Miller et al., *Federal Practice and Procedure* § 1705 (3d ed. 2001) ("Typical examples involve multiple claims against a life-insurance company for the proceeds of a policy that focus on an attempted change of beneficiary . . . ."). Alfa legitimately feared multiple liability based on competing claims to the same life insurance proceeds. Therefore, interpleader was appropriate. *See* M.R.C.P. 22(a) & cmt.

¶16. On appeal, C.D. argues that interpleader is not appropriate because Alfa has "unclean hands." By "unclean hands," C.D. means that Alfa's alleged tortious conduct is responsible for the failure of his attempt to change the ownership and beneficiaries of the policy—or perhaps that Alfa induced him to pay premiums on a policy that he did not own. However, C.D.'s allegations—even if true—are not a defense to Alfa's interpleader complaint.

¶17. C.D.'s argument harkens back to the "historical requirements" for "equitable interpleader." *First Nat'l Bank of Vicksburg v. Middleton*, 480 So. 2d 1153, 1155 (Miss. 1985). "Historically"—that is, prior to the adoption of the Mississippi Rules of Civil Procedure—"equitable interpleader ha[d] four requirements," one of which was that the party seeking interpleader "must have incurred no independent liability to either of the claimants." *Id.* (quoting V.A. Griffith, *Mississippi Chancery Practice* § 23 (2d ed. 1950)). However, our Supreme Court held that "Rule 22 of the Mississippi Rules of Civil Procedure . . . terminated the historical requirements for interpleader in the chancery courts," including the no-

8

independent-liability requirement. *Id.* at 1155, 1156-57. The Court explained that Rule 22 was "designed to eliminate the technicalities which formerly limited the use of interpleader, and thereunder interpleader is available to cover *any* situation of exposure to multiple liability under the procedure outlined in the rule." *Id.* at 1156 (emphasis added) (quoting 48 C.J.S. *Interpleader* § 5, at 125-26 (1981)). Rule 22 is to be applied "liberally" and not subjected to "technical" limitations, "and any doubts should be resolved in favor of permitting an interpleader action to lie." *Id.* Rule 22 "interpleader is a procedural device" "directed toward increasing the availability of interpleader." *Id.* Its availability is not subject to the equitable doctrine of unclean hands. Because interpleader was appropriate, and because Alfa deposited the full amount of the life insurance proceeds with the court, the chancery court appropriately released and discharged Alfa from any liability under the policy and as to the interpled funds. *See* M.R.C.P. 22(b) & cmt.

¶18.    However, C.D.'s counterclaims against Alfa present a different issue. To begin with, it is clear that counterclaims are permissible in an interpleader action. *See Robertson v. La Linda Inc.*, 548 So. 2d 1308, 1311-12 (Miss. 1989); *Middleton*, 480 So. 2d at 1156-57; M.R.C.P. 22 cmt. (explaining that counterclaims by a claimant against the party that initiated the interpleader may be litigated in the second or third stage of an interpleader action); James W. Shelson, *Mississippi Chancery Practice* § 17:3 (2017) ("All . . . counterclaims . . . are appropriate for a resolution in the course of the interpleader proceedings, and the court will be in error if it refuses to entertain and decide all claims."); *see also Kentucky Cent. Life Ins.*

*v. Vollenweider*, 844 S.W.2d 460, 461 (Mo. Ct. App. 1992) (interpleader action to determine rights to proceeds from life insurance policy; one claimant counterclaimed against insurer for misleading the insured "on how to go about changing ownership of the policy"; the appellate court noted that the counterclaim had been stayed pending appeal).

¶19.   In this case, Alfa's motion for summary judgment in the chancery court did not directly address C.D.'s counterclaims.  Rather, Alfa's motion addressed the availability of the interpleader procedure and Alfa's liability *under the insurance policy* as to the interpled funds (the proceeds of the policy).  Moreover, it is clear that the chancery court's order granting summary judgment to Alfa did not address the merits of C.D.'s counterclaims.  The court's order expressly stated that C.D.'s countercomplaint was "dismissed as moot."

¶20.   C.D.'s independent claims against Alfa for negligence, fraud, and other torts may or may not have any merit.  No court has addressed that issue, which is not before us on appeal.  However, C.D.'s counterclaims are not "moot."  They are separate and independent tort claims against Alfa.  Moreover, Alfa's discharge from liability under the terms of the insurance policy did not terminate or bar C.D.'s tort claims.  C.D. properly asserted these claims as counterclaims in the interpleader action, and the chancery court's refusal to entertain the claims was in error.  *See supra* ¶18.

¶21.   On appeal, Alfa argues that C.D.'s counterclaims involve distinct issues of fact and law and, thus, are only "permissive counterclaims," not "compulsory counterclaims."  Alfa also predicts that C.D. "would likely seek discovery as to Alfa and its agents were [he] to

10

proceed on [his] negligence claim." Alfa argues that, for these reasons, C.D.'s counterclaims "were properly dismissed as moot." However, characterization of the counterclaims as "permissive" or "compulsory" is irrelevant to the issues in this appeal. Even assuming (solely for the sake of argument) that the counterclaims were not compulsory, that does not render the claims "moot." Again, C.D. was entitled, under Mississippi Rules of Civil Procedure 13 and 22, to assert counterclaims against Alfa in this interpleader action. That being the case, it was error for the chancery court to dismiss the claims as "moot."

¶22. In summary, with respect to Alfa, we affirm the judgment of the chancery court insofar as the court permitted Alfa to interplead the defendants and discharged Alfa from liability under the policy and with regard to the interpled funds. However, we reverse and remand the judgment of the chancery court insofar as it dismissed C.D.'s counterclaims against Alfa as "moot." We now address the chancellor's subsequent ruling granting summary judgment to Angela as the beneficiary of the subject life insurance policy.

## II. The Interpled Funds

¶23. "Generally, a policy of life insurance is a stand-alone contract whose purpose is to provide a sum of money to the named beneficiary upon the death of the listed insured." *Barber v. Balboa Life Ins.*, 747 So. 2d 863, 866 (¶11) (Miss. Ct. App. 1999). The policy owner may select any individual as the policy's beneficiary. *Van Zandt v. Morris*, 196 Miss. 374, 380, 17 So. 2d 435, 436 (1944). However, "[t]he policy owner's rights largely end at the death of the insured. The policy beneficiary then has a right to the proceeds, which until

11

death is only an expectancy. At the insured's death the right to change the beneficiary no longer exists; the rights of the beneficiary have vested." *Evans v. Moore*, 853 So. 2d 850, 855 (¶22) (Miss. Ct. App. 2003) (citations omitted).

¶24. As discussed above, the policy was issued to Annie as the owner and primary beneficiary, with Angela designated as the contingent beneficiary. The policy provides that "upon the death of the owner, ownership and control of the policy . . . shall pass to the estate of the deceased owner." "The language and provisions of insurance policies are viewed as contracts and are subject to the same rules of interpretation as other contracts." *Hayne v. The Doctors Co.*, 145 So. 3d 1175, 1180 (¶12) (Miss. 2014). "Because insurance policies are creatures of contract, if the language is clear and unambiguous, then the language of the policy must be interpreted as written." *Id.* Therefore, when Annie died ownership and control of the policy passed to her estate.

¶25. The chancellor concluded, and we agree, that C.D. and Otis had no authority to change the ownership of the policy or designate new beneficiaries. No estate was ever opened for Annie, nor was there ever any determination of her heirs. The only purported authority for C.D.'s and Otis's action is an affidavit they provided to Alfa identifying themselves (and Willie Mae) as Annie's heirs. This was insufficient to give them authority to change the ownership of a policy that, by its clear and unambiguous terms, was the property of Annie's estate. *Cf. Long v. McKinney*, 897 So. 2d 160, 174 (¶60) (Miss. 2004) (holding that an "estate must, of course, be opened and administered through the chancery

12

court" before claims may be pursued on its behalf); *Delta Health Group Inc. v. Estate of Pope ex rel. Payne*, 995 So. 2d 123, 125-26 (¶12) (Miss. 2008) (holding that when "no estate had been opened," a party could not act as "the administrator of a non-existent estate").

¶26.    While there does not appear to be a Mississippi case addressing this precise issue, courts in other states have reached the logical conclusion that parties such as C.D. and Otis lack authority to make changes to the ownership or beneficiaries of a life insurance policy owned by a deceased relative.  In *Prudential Insurance Co. v. Stephens*, 498 F. Supp. 155, 157 (E.D. Va. 1980), the court held that when the policy owner died,

> title to the policy passed to her administrator whenever he may qualify as such, not to her husband . . . in his capacity as the sole heir of her estate.  Although her husband was preferred by statute for appointment as administrator of her estate, he had to apply to qualify as administrator.  *Because he never qualified, title to the policy never passed to him, and any act of dominion he exercised over the policy, other than those acts specifically permitted by statute, had no legal effect.*  A change of the beneficiary of a life insurance policy does not fall within the . . . narrow categories of permitted acts.

*Id.* at 157.[1] (Emphasis supplied) (internal citation omitted).

¶27.    Similarly, in *Vollenweider*, *supra*, the Missouri Court of Appeals held that the deceased policy owner's husband lacked authority make changes to the policy, although he

---

[1] Like Virginia, Mississippi has certain statutes that permit a decedent's heirs at law to take possession of certain categories of the decedent's assets without opening and administering an estate.  *See, e.g.*, Miss. Code Ann. § 91-7-322 (Rev. 2013); *see generally* Robert A. Weems, *Wills and Administration of Estates in Mississippi* § 2.52 (3d ed. 2003). It is not apparent that any of these statutes would apply to the facts of this case or that C.D. complied with the necessary statutory requirements.  Nor has C.D. argued that any of these statutes apply or authorized him to change the ownership and beneficiaries of the policy. Therefore, this opinion does not address the applicability of any such statutes.

13

was the insured and was named as her executor in her will. *See Vollenweider*, 844 S.W.2d at 462. The court held that the husband "never became the personal representative of [his deceased wife's] estate because her estate was not opened until after [his] death," and the husband lacked authority to make himself "the owner of the policy merely because he was named as personal representative under [her] will." *Id.*

¶28. The result is the same in this case. Neither C.D. nor Otis opened an estate or took any other steps to obtain the authority necessary to act on behalf of Annie's estate. Therefore, C.D. and Otis lacked the authority to make changes to the ownership or beneficiary designations of the subject life insurance policy, which became the property of Annie's estate upon her death. Accordingly, Annie's designation of Angela as the policy's contingent beneficiary remained in effect at the time of Christopher's death. And the chancery court correctly concluded that there was no genuine issue of material fact and that Angela was entitled to the proceeds of the policy.

## CONCLUSION

¶29. Alfa was entitled to interplead the defendants and to be discharged from liability as to any claim to the proceeds of the insurance policy under the terms of the insurance policy. In addition, the chancery court correctly ruled that there was no genuine issue of material fact and that Angela was entitled to summary judgment and to the proceeds of the policy. Therefore, we affirm the chancery court on those issues. However, the Mississippi Rules of Civil Procedure permit counterclaims in an interpleader action, and C.D.'s counterclaims

14

were not "moot" and should not have been dismissed on that ground. Accordingly, we reverse and remand that part of the case for further proceedings consistent with this opinion.

¶30.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**