# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00751-COA

LINDSEY CREED BECKHAM                        APPELLANT

v.

RITA L. BECKHAM AND TERRY L. BECKHAM       APPELLEES

DATE OF JUDGMENT:            04/23/2018
TRIAL JUDGE:                HON. DENISE OWENS
COURT FROM WHICH APPEALED:   HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      JOHN W. CHRISTOPHER
ATTORNEYS FOR APPELLEES:     DAVID BRIDGES
                                   TIFFANY PIAZZA GROVE
NATURE OF THE CASE:          CIVIL - CONTRACT
DISPOSITION:                AFFIRMED - 11/26/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., TINDELL AND LAWRENCE, JJ.**

**J. WILSON, P.J., FOR THE COURT:**

¶1. Prior to his death at the age of thirty-five, Brad Beckham started filling out a form to change the beneficiary on a life insurance policy from his mother, Rita Beckham, to his wife, Lindsey Beckham. However, he did not complete the form, sign the form, or submit it to the insurer prior to his death. Brad had also orally inquired of his employer about changing the beneficiary on a second life insurance policy. However, he never completed any paperwork related to that policy.

¶2. After Brad died, Rita filed claims under both policies and obtained all death benefits payable under both policies. Lindsey filed suit, and the chancery court preliminarily enjoined

Rita[1] from spending or transferring the proceeds.  However, the court later granted summary judgment in favor of Rita, holding that neither the incomplete, unsigned change-of-beneficiary form nor Brad's oral statement to his employer was sufficient to change the beneficiary designations of the respective policies.  We conclude that the chancery court correctly applied Mississippi law.  Therefore, we affirm the court's order granting summary judgment in favor of Rita.

### FACTS AND PROCEDURAL HISTORY

¶3.     Prior to his marriage to Lindsey, Brad had three life or accidental death insurance policies.  One policy that is not at issue in this case named Brad's minor daughter, Riley, as the beneficiary.[2]  A $250,000 MetLife policy and a $20,000 Bluebonnet/Blue Cross & Blue Shield (BCBS) policy both named Brad's mother, Rita, as the beneficiary.  The record suggests that Brad may have designated Rita as the beneficiary on the understanding that she would hold the funds for Riley's benefit.  At the time, Brad worked for his parents' company, Capital Concrete Cutting Inc.  The BCBS policy was a benefit of Brad's employment.

¶4.     Brad met Lindsey in 2012, and they were married in December 2015.  Each of them has a daughter from a prior relationship.  In 2016, Brad and Lindsey learned that Lindsey was pregnant with twins with an expected delivery date in December.

¶5.     At some point after Brad began dating Lindsey, conflicts developed concerning Brad's parents' desire to spend time with Riley.  Rita and Terry allege that Lindsey would not allow

---

[1] Lindsey also sued Rita's husband/Brad's father, Terry Beckham.  We will simply refer to the defendants as "Rita," since she was the named beneficiary under the policies.

[2] Riley is Brad's daughter from a prior relationship.

them to see Riley. In August 2016, Rita and Terry filed a petition for grandparents' visitation in chancery court. On September 6, 2016, Rita and Brad argued about the situation at work, and Rita terminated Brad's employment. Brad subsequently found a new job.

¶6. On October 17, 2016, Brad started filling out a change-of-beneficiary form for his MetLife policy. He completed page one of the form with basic information about the insured and the policy, and he initialed and dated the bottom of the page. On page two of the form, he provided Lindsey's name and information as a beneficiary under the policy. However, he did not indicate what percentage of the proceeds she should receive, and he did not initial or date the bottom of the page. According to Lindsey, Brad stopped working on the form, and the two of them went to lunch. Brad did not complete the remainder of the form, nor did he sign the form.

¶7. On October 18, 2016, Brad went to Louisiana on a business trip for his new job. On October 20, 2016, Brad died in Louisiana in an accidental death. Lindsey gave birth to the couple's twins on December 19, 2016.

¶8. After Brad's death, Rita filed claims with MetLife and BCBS for death benefits under the policies. Lindsey also made a claim against the MetLife policy and submitted Brad's incomplete, unsigned change-of-beneficiary form. However, MetLife informed Lindsey that the form was ineffective because Brad had not signed it. MetLife and BCBS both paid death benefits to Rita, as the named beneficiary under the policies. Lindsey filed suit against Rita in chancery court. Lindsey's complaint sought, inter alia, a declaratory judgment that she was the owner of the proceeds of the policies. The chancellor granted Lindsey's request for

a preliminary injunction ordering Rita not to transfer or spend the proceeds.

¶9.    Discovery ensued.  The secretary at Capital Concrete Cutting, Linda Jones, testified that at some point before or after Brad married Lindsey, Brad stuck his head in her office door and said, "Hey Lin, I guess I need to change my beneficiary on my [BCBS] life insurance policy."  Jones told Brad that he needed to give her a written, signed request to make the change.  Brad said, "Okay," but he never made a written request or mentioned the issue to Jones again.

¶10.   In response to Rita's requests for admissions, Lindsey admitted as follows:

> **REQUEST FOR ADMISSION NO. 16:**  Admit that Brad Beckham did not do everything he could reasonably have done to change you to the beneficiary on any of one of his three life insurance policies.
>
> **RESPONSE:**  Admit; Affirmatively Brad did not envision that he would die before he returned home to complete the change of beneficiary forms and file them with the insurance companies.  Changing his beneficiary on his life insurance policies was a process which Brad had started but which he did not complete because death intervened.

¶11.   Rita moved for summary judgment, arguing that the incomplete MetLife form and Brad's comments to Jones about the BCBS policy were not sufficient to change the beneficiary designated under either policy.  The chancery court agreed and granted summary judgment in favor of Rita.  Lindsey appealed.

## ANALYSIS

¶12.   "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the [non-moving] party . . . ."  *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quotation marks omitted).  Summary

4

judgment "shall be rendered" if the record evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶13.    The sole issue in this case is whether Brad's actions prior to his death were sufficient to change the designated beneficiary under his MetLife policy or BCBS policy.  On this issue, "Mississippi follows the majority of courts that accept the 'substantial compliance rule.'" *Bell v. Parker*, 563 So. 2d 594, 598 (Miss. 1990).  "Under this rule, where an insured [(1)] evidences an intent to change beneficiaries, and [(2)] does all (s)he can do to comply with the requirements of the policy, substantial compliance will be found and the change of beneficiaries will be upheld." *Id.*

¶14.    In *Bell*, Helen Holmes and John Bell were in a relationship for thirteen years, had cohabited for seven years, and had contemplated marriage. *Id.* at 595.  However, at the time of Helen's death, they were living apart. *Id.*  Six days before Helen died, she told her boss's administrative assistant that she wanted to remove John as the named beneficiary on all of her policies and substitute her children. *Id.* at 595-96.  Helen specifically stated that she wanted to remove John from her policies because she had decided not to marry him. *Id.* at 596.  Helen's employer kept insurance forms and handled all transactions with the insurer. *Id.* at 595.  Helen signed and completed a change-of-beneficiary form for her accident policy, but her employer was out of forms for her group life insurance policy. *Id.* at 596.  The administrative assistant told Helen that she would get the form for her, but Helen died six days later, before receiving the necessary form. *Id.*  On these facts, the Supreme Court

5

affirmed the chancellor's holding that Holmes "had, in fact, done everything she knew how to do to change the beneficiary on her group life insurance policy." *Id.* at 599. The Court reasoned that "Helen was prevented from effectuating a written change in beneficiaries by events over which she had no control." *Id.* Therefore, the Court concluded that Helen had effectively changed the beneficiary designation to her children. *Id.* at 595.

¶15. In this case, the chancellor held that Brad's actions did not satisfy *Bell*'s "substantial compliance" rule. The chancellor reasoned:

> Brad Beckham did not substantially comply with the requirements for changing a beneficiary. He did not do everything he could to effect a beneficiary change. Brad Beckham only completed the first page of an eight page change of beneficiary form and he failed to even sign the form. He took no affirmative steps to deliver a completed form to MetLife. The undisputed evidence shows that Brad Beckham did not do everything he could reasonably have done to effect the change in beneficiary. Based on the testimony of Linda Jones, the [BCBS] policy also was not changed by Brad Beckham although he had the opportunity to do so.

¶16. We concur with the chancellor's reasons for granting summary judgment. In general, the proceeds of a life insurance policy must be paid to the named beneficiary upon the death of the insured. *Pulliam v. Alfa Ins. Co.*, 238 So. 3d 620, 626 (¶23) (Miss. Ct. App. 2018). To avoid the application of this general rule of law, Lindsey bore the burden of proving that Brad (1) "evidence[d] an intent to change beneficiaries" and (2) did "all [that he could] do to comply with the requirements of the policy . . . ." *Bell*, 563 So. 2d at 598. The chancellor correctly held that Brad failed to meet the second prong of Mississippi's "substantial compliance" test. That is, even if there is a disputed issue of fact as to Brad's "intent," the undisputed evidence shows that Brad did not do all that he could do or knew how to do to

change his beneficiary designations. For whatever reason, Brad stopped filling out the MetLife form and never signed it, even though nothing prevented him from doing so. In addition, Brad never took any action to change the beneficiary under his BCBS policy, even though Jones told him that all that was required was a signed, written request. Brad never made such a request, though nothing prevented him from doing so. Finally, we note that Lindsey expressly admitted that Brad did not do all that he reasonably could have done to change his beneficiary designations. *Supra* ¶10.[3] On these facts, we agree with the chancellor that Lindsey failed to establish substantial compliance. Therefore, the chancellor properly granted summary judgment in favor of Rita.[4]

¶17. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

---

[3] *See* M.R.C.P. 36(a) ("A party may serve on any other party a written request for the admission . . . of the truth of . . . statements or opinions of fact or of the application of law to fact . . . ."); *cf. Cole ex rel. Cole v. Buckner*, 819 So. 2d 527, 530-31 (¶¶7-9) (Miss. 2002) (holding that a request for admission may "apply the legal standard of care to the facts of the case").

[4] Lindsey's opening brief argues in part that Mississippi's existing substantial compliance requirement is too strict and that Mississippi should instead "apply the definition of substantial compliance as found in the federal common law." Lindsey's reply brief expressly argues that "the principle of stare decisis must give way" in this case, apparently suggesting that we should depart from Mississippi Supreme Court precedent. However, "this Court does not have the authority to overrule or ignore [S]upreme [C]ourt precedent." *Cahn v. Copac Inc.*, 198 So. 3d 347, 358 (¶35) (Miss. Ct. App. 2015). Rather, "[w]e must follow [S]upreme [C]ourt precedent . . . ." *Rivera-Guadiana v. State*, 71 So. 3d 1221, 1224 (¶14) (Miss. Ct. App. 2011).