# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01735-COA

C. D. PULLIAM                                                          APPELLANT

v.

ALFA LIFE INSURANCE CORPORATION                                        APPELLEE

DATE OF JUDGMENT:              10/10/2018
TRIAL JUDGE:                   HON. KENNETH M. BURNS
COURT FROM WHICH APPEALED:     CLAY COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        ROBERTA LYNN HAUGHTON
ATTORNEYS FOR APPELLEE:        MICHAEL EARL PHILLIPS
                               JACOB O. MALATESTA
NATURE OF THE CASE:            CIVIL - INSURANCE
DISPOSITION:                   AFFIRMED - 10/06/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     On November 18, 2008, Annie Patterson purchased a $50,000.00 life insurance policy

on the life of her nephew and ward, Christopher Nance, through Alfa Life Insurance

Corporation.  Annie was the owner and primary beneficiary of the policy, and Christopher's

biological mother, Angela Nance, was listed as the contingent beneficiary. [1]  Annie died on

April 30, 2013.  On October 11, 2013, Annie's father, C. D. Pulliam, attempted to modify

the policy to have himself replace Annie as an owner and as the primary beneficiary of the

policy.  However, he was ultimately unsuccessful due to completing the wrong forms to

---

[1] The record is unclear as to Angela Nance's relationship to Annie Patterson, C. D.
Pulliam, Otis Pulliam, and Willie Mae Townsend.

effectuate the changes. Christopher died on November 16, 2014. As a result of Christopher's death, a dispute arose as to whether Angela, as a contingent beneficiary, or C.D., as a substituted primary beneficiary, was entitled to the life insurance proceeds.

¶2. On January 23, 2015, Alfa filed a complaint for interpleader and a motion for leave to deposit funds and requested injunctive relief pertaining to the payment of the life insurance proceeds. In response, C.D. filed his answer, affirmative defenses and a counter-complaint against Alfa which alleged multiple breach of contract and negligence claims. Ultimately, the chancery court held that: (1) Alfa was entitled to interplead the insurance proceeds, (2) Angela was entitled to the insurance proceeds and (3) C.D.'s counter-complaint should be "dismissed as moot."

¶3. On April 25, 2016, C.D. filed a notice of appeal from that original chancery court ruling. In *Pulliam v. Alfa Insurance Co.* (*Pulliam I*), 238 So. 3d 620 (Miss Ct. App. 2018), this Court affirmed in part and reversed and remanded in part the chancery court's judgment. This Court held that C.D.'s counter-complaint should not have been "dismissed as moot," and therefore that ruling was remanded to the chancery court for further proceedings. All other issues were affirmed. The only issues remaining on remand were C.D.'s breach of contract and negligence claims against Alfa.

¶4. Upon remand to the chancery court and subsequent to *Pulliam I*, on June 8, 2018, Alfa filed a second motion for summary judgment in response to C.D.'s counter-complaint. On September 17, 2018, and two days before the summary judgment hearing, C.D. filed a

2

response to Alfa's motion for summary judgment and a motion to amend his counter-complaint. On October 10, 2018, the chancery court entered an order granting Alfa's summary judgment motion dismissing the legal claims asserted by C.D. Further, the chancery court dismissed C.D.'s motion to amend his counter-complaint. C.D. appealed. Finding no error, we affirm the judgment of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶5.     Prior to the current appeal, this case has been appealed two times. C.D.'s first appeal was prematurely filed on July 29, 2015. The first appeal was dismissed by the Mississippi Supreme Court on December 17, 2015, due to the fact that the interpled funds had not yet been dispersed and the order granting summary judgment was not a final appealable judgment. C.D.'s second appeal was filed on April 25, 2016, and was resolved by this Court in *Pulliam I.* The underlying facts of the case were previously reported in this Court's opinion in *Pulliam I* and are incorporated into this opinion:

> In September 2008, the Clay County Chancery Court appointed Annie Patterson general guardian of her nephew, Christopher Nance, who was then fourteen years old. Christopher's mother, Angela Nance, joined in Annie's petition for the guardianship. In November 2008, Alfa issued a $50,000 life insurance policy on the life of Christopher. Annie was the owner and primary beneficiary of the policy, and Angela was listed as the contingent beneficiary of the policy. Annie paid all premiums on the policy until her death on April 30, 2013. The policy provides that "upon the death of the owner, ownership and control of the policy . . . shall pass to the estate of the deceased owner."
>
> Annie was survived by her father, C.D. Pulliam, and siblings, Otis Pulliam and Willie Mae Townsend. No estate was ever opened for Annie. In October 2013, C.D. and Otis provided Alfa with an affidavit stating that they and Willie Mae were Annie's heirs. In addition, Otis completed an Alfa "Change of

3

Ownership" form that purported to make Otis the owner of the policy, C.D. the contingent owner, Otis and C.D. the primary beneficiaries, and Willie Mae a contingent beneficiary. C.D. alleges that agents or employees of Alfa filled out the form and documentation and directed them to sign. C.D. also alleges that he paid all premiums on the policy after Annie's death.

Christopher died on November 16, 2014. The record contains a letter dated November 17, 2014, that is addressed to Annie and states as follows: "This is your notification that your recent policy change request has been closed as incomplete." The record is unclear as to what prompted this letter, which is dated only one day after Christopher's death but more than one year after Annie died and C.D. and Otis originally attempted to make changes to the policy. According to Alfa, the original attempted policy change was "closed as incomplete" because, in October 2013, Otis and C.D. had "incorrectly filled out a single owner form" rather than a form for multiple owners. As noted above, however, C.D. alleges that agents/employees of Alfa prepared the forms for him and Otis to sign.

On January 23, 2015, Alfa filed an interpleader complaint in the Clay County Chancery Court "to determine the proper beneficiary or beneficiaries of the . . . policy." Alfa named C.D., Otis, Willie Mae, and Angela as defendants. Alfa stated that C.D. and Otis claimed that they were entitled to the proceeds of the policy as the primary beneficiaries. Alfa also stated that Angela had "not yet filed a claim" but might be entitled to the proceeds, "as she was named the contingent beneficiary by Annie . . . when the policy was purchased." Alfa stated that it had "not been able to determine which of [them was] legally entitled to the proceeds." Alfa also filed a motion, which the court granted, to deposit $50,578.46 with the court pursuant to Mississippi Rule of Civil Procedure 22.

C.D. filed an answer and countercomplaint against Alfa. C.D. claimed that he was entitled to the proceeds of the policy, and he asserted counterclaims against Alfa for breach of contract, breach of the duty of good faith and fair dealing, negligence, gross negligence, bad faith failure to adjust and pay an insurance claim, tortious breach of contract, and punitive damages. C.D.'s countercomplaint generally alleged, among other things, that he had paid all premiums on the policy after Annie's death, that Alfa's agents or employees had filled out the change-of-ownership forms for him, and that any mistake in making the change of ownership and designation of new beneficiaries was the result of Alfa's tortious conduct. Angela sent a two-page pro se letter to the

4

judge, which the clerk filed and docketed as her answer to Alfa's complaint. The docket reflects that Otis and Willie Mae were served, but neither answered the complaint or otherwise participated in the litigation.

Alfa answered C.D.'s countercomplaint and then filed a motion for summary judgment. In its motion for summary judgment, Alfa argued that it was entitled to summary judgment on its interpleader complaint because it had deposited the proceeds of the policy with the court. However, Alfa did not directly address C.D.'s counterclaims. The court held a hearing on the motion and granted Alfa's motion for summary judgment. The court's order stated that C.D.'s countercomplaint was "dismissed as moot." Angela appeared pro se at the summary judgment hearing, and the court advised her that she might want to hire an attorney to protect her interest in the litigation.

C.D. filed a notice of appeal from the court's order. However, Alfa filed a motion to dismiss the appeal. Alfa argued that the chancery court's order was not a final, appealable judgment because the chancellor did not finally adjudicate ownership of the interpled funds or certify the order as final pursuant to Mississippi Rule of Civil Procedure 54(b). A panel of the Supreme Court granted Alfa's motion and dismissed the appeal. *Pulliam v. Alfa Ins.*, No. 2015-TS-01147 (Dec. 17, 2015).

While the first appeal was pending, Angela retained counsel and filed a motion for summary judgment claiming ownership of the interpled funds as the rightful beneficiary of the policy. The chancery court subsequently granted Angela's motion for summary judgment and entered a final judgment finding that Angela was the beneficiary of the policy and that she was entitled to the proceeds because C.D. and Otis lacked authority to change the ownership and beneficiaries of the policy following Annie's death.

C.D. filed a timely notice of appeal from the final judgment. He identifies two issues on appeal: (1) whether the chancery court erred by "granting summary judgment to [Alfa] and dismissing [his] counterclaim" and (2) whether the chancery court erred in granting summary judgment and "awarding the interpled funds to Angela."

*Pulliam I*, 238 So. 3d at 622-24 (¶¶3-11). In *Pulliam I*, this Court held that C.D. Pulliam's

counter-complaint should not have been "dismissed as moot" and therefore that issue was

remanded to the chancery court for further proceedings. All other issues were affirmed.

¶6.     Upon remand to the chancery court, on June 8, 2018, Alfa filed a second motion for summary judgment in response to C.D.'s counter-complaint. Two days before the summary judgment hearing, on September 17, 2018, C.D. filed his response to Alfa's second motion for summary judgment. C.D.'s response also included a motion to amend his counter-complaint to add claims for unjust enrichment, intentional misrepresentation, conversion, and fraud. There was not a proposed amended complaint attached to C.D.'s motion to amend. On October 10, 2018, the chancery court entered an order granting Alfa's motion for summary judgment and entered a judgment as a matter of law in Alfa's favor dismissing them completely from the action. The chancery court held that all of C.D.'s claims relied on the premise that there was a contract between him and Alfa and further that Alfa owed him a duty regarding the insurance policy. The chancery court found that C.D. failed to present any evidence to support the existence of a contract or that Alfa owed C.D. any duty related to the insurance policy. Further, C.D.'s motion to amend the complaint was denied. C.D. appealed.

## STANDARD OF REVIEW

¶7.     "The Court reviews a trial court's grant or denial of summary judgment de novo." *Collins v. City of Newton*, 240 So. 3d 1211, 1216 (¶11) (Miss. 2018) (citing *Crosthwait v. S. Health Corp. of Houston Inc.*, 94 So. 3d 1070, 1073 (¶10) (Miss. 2012)). Further, "[m]otions for leave to amend are left to the trial judge's sound discretion." *Simmons v.*

*Thompson Mach. of Miss. Inc.*, 631 So. 2d 798, 800 (Miss. 1994). Therefore, we review determinations to grant or deny leave to amend under the abuse of discretion standard. *Webb v. Brasswell*, 930 So. 2d 387, 392 (¶8) (Miss. 2006).

**ANALYSIS**

¶8. C.D. asserts that the chancery court erred in granting Alfa's motion for summary judgment and denying his motion to amend his counter-complaint. All of the claims asserted in C.D.'s counter-complaint arose out of the theories of contract and negligence, including (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) negligence, (4) gross negligence, (5) bad faith failure to adjust and pay insurance claim, (6) tortious breach of contract, and (7) punitive damages. C.D. attempted to amend his complaint to assert additional claims, including (1) unjust enrichment, (2) intentional misrepresentation, (3) conversion, and (4) fraud.

**I.    Summary Judgment**

¶9. C.D. asserts that his counter-complaint contained genuine issues of material fact to overcome Alfa's motion for summary judgment. C.D. alleges that there was substantial evidence of a contract between himself and Alfa to give credence to the claims asserted in his counter-complaint. C.D. argues on appeal that he continued to make the monthly premium payments on the insurance policy after Annie's death. Further, C.D. argues that it was Alfa who chose and completed the change-of-ownership and beneficiary-designation forms and that he and Otis merely signed the forms at Alfa's direction. C.D. alleges that Alfa

7

was solely responsible for completing the wrong forms. Finally, C.D. alleges that Alfa led him to believe that he had the authority to transfer and had successfully transferred ownership of the insurance policy and changed the beneficiary designation. He asserts that had he known that he could not and had not successfully transferred ownership of the existing policy, he would not have continued making the premium payments and would have sought additional coverage from another insurance provider.

¶10. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]" M. R. C. P. 56(c). The evidence must be viewed in the light most favorable to the opposing party. *Collins*, 240 So. 3d at 1216 (¶11). In *Pulliam I*, this Court stated:

> However, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Mississippi rule of Civil Procedure 56, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P 56(e). "To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim."

*Pulliam I*, 238 So. 3d at 624 (¶12) (citing *Morton v. City of Shelby*, 984 So. 2d 323, 330 (¶17) (Miss. Ct. App. 2007)).

¶11. In *Pulliam I*, this Court held that C.D. lacked the authority to change the original policy taken out by Annie. More specifically, *Pulliam I* stated:

> The chancellor concluded, and we agree, that C.D. and Otis had no authority to change the ownership of the policy or designate new beneficiaries. No estate was ever opened for Annie, nor was there ever any determination of her

8

heirs. The only purported authority for C.D.'s and Otis's action is an affidavit they provided to Alfa identifying themselves (and Willie Mae) as Annie's heirs. This was insufficient to give them authority to change the ownership of a policy that, by its clear and unambiguous terms, was the property of Annie's estate. *Cf. Long v. McKinney*, 897 So. 2d 160, 174 (¶60) (Miss. 2004) (holding that an "estate must, of course, be opened and administered through the chancery court" before claims may be pursued on its behalf); *Delta Health Group Inc. v. Estate of Pope ex rel. Payne*, 995 So. 2d 123, 123-26 (¶12) (Miss. 2008) (holding that when "no estate had been opened," a party could not act as "the administrator of a non-existent estate").

*Id*. at 627 (¶25). C.D. presented no additional evidence at the summary judgment hearing subsequent to *Pulliam I* to substantiate his claim that he had any authority or any ownership interest whatsoever in the original insurance policy to back up the claims in his counter-complaint. Further, C.D. failed to present any proof that any additional alleged communications or transactions between Alfa and C.D. following Annie's death resulted in a contractual relationship. C.D. did not offer as proof any correspondence between himself and Alfa, cancelled checks or proof of premium payments, additional insurance applications, or any other proof that Alfa led C.D. to believe that they had entered into a contractual or fiduciary relationship. Other than C.D.'s conclusory allegations, there was no factual evidence presented at the summary judgment hearing to establish that C.D. and Alfa ever entered into a valid contract or that Alfa owed C.D. any duty. Absent a valid contract or obligation of a duty owed by Alfa, all of the claims asserted in C.D.'s counter-complaint are without merit. Therefore, we find no error in the chancery court's decision regarding its ruling on Alfa's summary judgment motion.

## II. Motion to Amend

9

¶12.    C.D. argues that the chancery court erred in denying his motion to amend his counter-complaint.  C.D. attempted to amend his counter-complaint to include additional claims: (1) unjust enrichment, (2) intentional misrepresentation, (3) conversion, and (4) fraud. The motion to amend was dismissed.  C.D. relies on the language of Rule 15 of the Mississippi Rules of Civil Procedure stating, "leave to amend shall be granted when justice so requires." C.D.'s request is confusing at best in that he filed a motion to amend his complaint to assert additional causes of action; however, in his brief, he asserts that he "was not attempting to add any new causes of action" and that "the Appellant was merely seeking an opportunity to more fully set out his claim."  C.D. claims that his motion was made in good faith and that Alfa would suffer no prejudice as a result of his motion to amend being granted.

¶13.    While Rule 15 of the Mississippi Rules of Civil Procedure allows for the amendment of pleadings to be "freely given when justice so requires," this rule is not absolute, especially after three years.  The Mississippi Supreme Court stated in *Webb*, 930 So. 2d at 393 (¶9):

> In the absence of any apparent or declared reason—such as **undue delay**, bad faith or **dilatory motive** on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, under prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

(Emphasis added).    "Motions for leave to amend are left to the trial judge's sound discretion."  *Simmons*, 631 So. 2d 798 at 800 (Miss. 1994).    Therefore, we review determinations to grant or deny leave to amend under the abuse of discretion standard of review.  *Webb*, 930 So. 2d at 392 (¶8).  C.D. filed his original counter-complaint on March

10

2, 2015, and did not file his motion to amend until over three years later on September 17, 2018. Further, the motion to amend was filed merely two days before the hearing on Alfa's summary judgment motion. The motion was not properly noticed for a hearing and did not have a proposed amended counter-complaint attached. Finally, C.D. did not provide any additional proof to substantiate the request to amend his counter-complaint with the additional causes of action, and thus an amendment appeared futile and to delay the summary judgment hearing. Given the amount of time that this litigation had been pending, the timing of the motion to amend in relation to Alfa's motion for summary judgment, and the lack of proof to support the causes of actions to be amended, the chancery court did not abuse its discretion in denying the motion to amend. Therefore, we find no error in the chancery court's decision as to this issue.

## CONCLUSION

¶14. After review of the record, we find that the chancery court correctly held that there was no genuine issue of material fact to substantiate any of C.D.'s claims in his counter-complaint against Alfa and properly granted Alfa's motion for summary judgment. Further, we find no error in the chancery court's denial of C.D.'s motion to amend.

¶15. **AFFIRMED.**

**BARNES, C.J, CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR.**

11